THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY v. SHAVER *et al.*

Fire Insurance: AGENCY: WHETHER OF INSURED OR INSURER: MISTAKE IN POLICY: REFORMATION. Defendants applied to G., an insurance agent, for a policy on goods kept in two separate buildings. G., was unable to write the policy in any of the companies which he represented, but he applied to A., who was plaintiff's agent, for the required policy. This he did under an agreement between him and A., that each should favor the other with business of this kind which he could not himself transact. By a mutual mistake between A. and G., the policy did not read as it was agreed between them that it should, but it was just the kind of policy which defendants had applied to G. for; and, though G. knew of the mistake, defendants were never informed of it until after some of the goods had been burned, when plaintiff brought this action to reform the policy. Defendants, however, were informed before the policy was issued that none of the insurance companies doing business in that place would write policies like the one in question. *Held*—

The St. Paul F. & M. Ins. Co. v. Shaver.

(1) That, though G. did not solicit the business of defendants in the ordinary sense of the term, he must nevertheless be regarded as plaintiff's soliciting agent, within the meaning of section 1, chapter 211, Laws of 1880, and therefore his knowledge of the mistake was not chargeable to defendants; and, as they had no actual knowledge of it, it was not a mutual mistake, and therefore it could not be corrected in equity.

(2) That whatever rights plaintiff might have had, had it acted promptly in the matter, and informed defendants, instead of G., of the mistake, it could not, after defendants had relied upon the policy and suffered loss under it, escape liability on account of the mistake.

*Appeal from Linn District Court.*—Hon. J. H. Preston, Judge.

Filed, December 20, 1888.

Defendants, I. H. Shaver, and others are manufacturers of crackers in Cedar Rapids. On the sixth of October, 1886, they procured from plaintiff a policy of insurance for $2,500. Of that amount $525 was placed on the building used as a manufactory, $925 on the machinery and fixtures, and the residue on stock and materials used in the business and manufactured goods in the building. At that time there was a wooden shed attached to the building, which was used as a storeroom, and for other purposes connected with the business, and the policy covered the goods stored in it. Subsequently defendants removed the property stored in the shed, a portion of it being placed in the main building, and the balance in a wooden building known as the "Flour-House," which was situated about sixteen feet from the main building, but detached from it, and the shed was torn down. They also purchased another building about seventy feet distant from the manufactory, which they designed to use as a place of storage. These changes rendered some change in the insurance carried by them necessary. They accordingly applied to T. M. Giberson, an insurance agent in the city, who had procured the policy above referred to. He was the agent of several companies, some of which had policies

on the property, but he did not represent the plaintiff. He had procured the policy mentioned above from J. S. Anderson & Son, who were agents for plaintiff, under an existing arrangement between them by which each, when he had an application for insurance which he was not able to place with any of the companies represented by him, would give the application to the other, who would place it in some company for which he was agent. It was arranged between Giberson and defendants that the policy for $2,500 should be cancelled, and a new policy for the same amount should be issued.    He accordingly took the policy to Anderson & Son, who issued another in lieu of it; they having authority to issue policies.    The portions of the new policy descriptive of the property covered and amount of insurance are as follows:    "(1) *Nothing* on their two-story and basement brick composition-roofed building, and one-story brick composition-roofed boiler-room, at rear, occupied by the assured as a cracker factory, and situated on lot 5, fractional block 5, Cedar Rapids, Iowa. (2) $1,200 on stock of crackers, flour, lard, butter, molasses, sugar, sacks, packages, boxes and barrels, and all materials used in the manufacture of crackers, contained in the building above described, and in the one-story frame shingle-roof building adjoining on the *south-west and known as the 'Flour-House.'*    (3) $1,300 on stock of crackers, flour, lard, butter, sugar, sacks, boxes, packages, barrels and all other materials used in the manufacture of crackers, contained in the *two-story brick metal-roofed building, known as Nos. 77 and 79 South First street, Cedar Rapids, Iowa.*"    These provisions were contained in three slips, which were pasted on the face of the policy, the body of which was in print.    Portions of the printed matter, however, were stricken out, and the words printed in italics were inserted in writing.    Subsequently the stock and goods stored in the factory building were damaged by fire. Plaintiff thereupon brought this action for the reformation of the policy; alleging that the real contract between the parties was that the provision contained in the

second slip was to cover only the property stored in the "Flour-House," and that by the mistake of the agent who wrote the policy the words which make it cover that contained in the factory building were not stricken out before the policy was delivered. In their answer defendants denied that there was any mutual mistake, and in a counter-claim demanded judgment for the amount of the loss. The district court, on a final hearing, dismissed the petition, and entered judgment for defendants on the counter-claim. Plaintiff appeals.

*Charles A. Clark*, for appellant.

*Blake & Hormel*, for appellees.

REED, J.—The evidence satisfies us that defendants, when they sought to effect the change in the insurance, desired that the new policy should cover the goods in both the factory building and the "Flour-House," and that they communicated their desire in that respect to Giberson. It is uncontradicted, however, that, when the latter applied to Anderson & Son to make the change, he represented to them that their wish was that the new insurance should be placed on the property in the latter building only, and that the policy was written with the intention that it should cover that property only ; but by mistake the words in the printed slip, by which it is made to cover the property in the other building, were not stricken out. As between plaintiff and Giberson, then, there was a mutual mistake. It is important, therefore, to determine whether Giberson is to be regarded as the agent of defendants in the transaction ; for, if he bore that relation to them, the case would probably occupy the same position as though they, with the same object in view, had transacted the business in person, and the same mistake had occurred. It will be borne in mind that Anderson & Son were recording agents ; that is, they had authority to accept the risk and issue the policy. The question is therefore to be determined by the rules which would govern if the application had been made directly to plaintiff at its

home-office; for, being a corporation, it can act only through its officers or agents, and, the transaction being had with the agent, who in that particular transaction had full authority to act for it, the rights and relations of the parties must be the same as they would have been if some other agent or officer, having the same authority, had represented it. It is provided by our statute (ch. 211, sec. 1, Acts 18th Gen. Assem.) that "any person who shall hereafter solicit insurance or procure applications therefor shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or a renewal thereof, anything in the application or policy to the contrary notwithstanding." This provision is, we think, conclusive of the question under consideration. The transaction was simply an application by defendants for insurance on their property, and the issuance by plaintiff of its policy thereon, and the business was transacted through Giberson. The purpose of the statute was to settle, as between the parties to the contract of insurance, the relation of the agents through whom the negotiations were conducted. Many insurance companies provided in their applications and policies that the agent by whom the application was procured should be regarded as the agent of the insured. Under that provision, they were able to avail themselves, in many cases of loss, of defenses which would not have been available if the solicitor had been regarded as their agent, and many cases of apparent hardship and injustice arose under its enforcement, and that is the evil which was intended to be remedied by the statute, and it ought to be so interpreted as to accomplish that result.

Now, while Giberson did not solicit the insurance in the sense of having importuned defendants to apply for it, he did procure the application within the meaning of the statute; for he received it, and at his request the policy was issued upon it. To hold otherwise would be to put an exceedingly narrow construction upon the words of the enactment, and one which in many cases would defeat the manifest legislative intent. The

manner in which such business is transacted is known to all men. Prudent business-men and property-owners do not wait to be personally solicited before procuring insurance on their property, but their custom is to apply to the agent of some company or association engaged in the business of insurance ; and, if the agent is a mere solicitor, their application is forwarded to some agent or officer having authority to accept or reject it. The statute was as certainly intended to apply to transactions of that kind as to those in which the agent procured the application by personal solicitation ; and that was the character of the transaction in question. We conclude, therefore, that Giberson was the agent of plaintiff in the transaction, Defendants, then, were not parties to the mistake ; for the policy afforded them the protection which they sought, and they had no knowledge, until after the loss, that Giberson, in his communication with Anderson & Son, had departed from their instructions.

It was proven, however, that defendants were informed, before the policy was issued, that none of the insurance companies doing business in Cedar Rapids would accept a single risk upon property situated in different buildings, unless the policy contained what is known as the "average clause,"—that is, a provision that it should attach to the property in each in proportion as its value bore to the value of that in both ; and it is probably true that they understood that that provision would be inserted in the policy, but it was not. If plaintiff had acted promptly with reference to the matter, after it discovered this omission, it may be that it would now be entitled to a reformation of the policy in that respect. But it did not. The next day after the policy was written the attention of Anderson & Son was called to the fact that the policy by its terms covered the property in both buildings, and they knew that it did not contain the "average clause." But they did not notify defendants of the mistake. They notified Giberson, it is true, and requested him to make the correction before delivering the policy, but he neglected

to do so.   As he was not the agent of defendants, however, they were in no manner affected by the notice to him.   They accepted and relied on the policy, and had no intimation, until after the loss, that its provisions were in any manner different from what was intended by plaintiff.   Upon this state of facts, it is very clear, we think, that plaintiff is not now entitled to relief.   The mistake was its own, and it permitted defendants to remain in ignorance that one had been committed until the loss occurred.   During all the time between the delivery of the policy and the fire, they relied on the contract as it was written, omitting to obtain other insurance, which they might have done if they had been advised of the claim now urged; and, upon the plainest principles of justice, they are now entitled to have it enforced as written.   Many cases were cited by counsel which hold the doctrine that the solicitor of insurance is the agent of the assured; but, under the express provisions of our statute, they can have no application here, and we do not deem it necessary to give them further notice.

AFFIRMED.