STILLMAN v. ÆTNA LIFE INS. CO.

(District Court, N. D. Iowa, W. D.    March 14, 1917.)

No. 147.

1. INSURANCE ⬤═650—ACCIDENT INSURANCE—STATEMENTS IN APPLICATION—
ADMISSIBILITY IN EVIDENCE.
Code Iowa, § 1741, declares that all insurance companies or associations
shall upon the issuance or renewal of any policy attach or indorse there-
to a true copy of any application or representation of the insured which
by the terms of the policy is made part thereof or may in any manner
affect its validity, but such omission shall not render the policy invalid,
but forever precludes the insurer from pleading, alleging, or proving any
such application or representation or the falsity thereof, in an action on
such policy. What purported to be a copy of the schedule of warranties
was indorsed on an accident policy, but there was nothing to indicate that
it or the application was signed by the insured; the signature being omit-
ted. *Held*, that the schedule of warranties was not admissible in evi-
dence, and proof of the falsity of the warranties was not available in an
action on the policy.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1671, 1672.]

2. INSURANCE ⬤═650—ACCIDENT INSURANCE—STATEMENTS IN APPLICATION—
ADMISSIBILITY IN EVIDENCE.
In such case, the insurer could not, by incorporating in the policy a
condition that the statements in the schedule of warranties indorsed
thereon were accepted and warranted to be true by the acceptance of the
policy, evade the provisions of the Code, and in that manner obviate the
necessity of indorsing on the policy the application and warranties.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1671, 1672.]

3. INSURANCE ⬤═378(2)—ACCIDENT POLICIES—KNOWLEDGE—"AGENT."
Under Code Iowa, § 1750, declaring that the term "agent" shall include
any other person who shall in any manner directly or indirectly transact
insurance business for any insurance company, and that any officer, agent,
or representative of an insurance company who may solicit insurance,
procure applications, and issue policies, shall be held to be the "agent"
of such insurance company with authority to transact all business within
the scope of his employment, anything in the application, policy, by-laws,
etc., to the contrary, notwithstanding, an accident insurance company is
charged with knowledge of its soliciting agent as to other insurance car-
ried by the insured; such fact being communicated to the agent, though
it was not communicated by the agent to the officials of the company.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 971, 973, 974,
977–997.

For other definitions, see Words and Phrases, First and Second Series,
Agent.]

4. INSURANCE ⬤═265—ACCIDENT POLICIES—CONSTRUCTION.
Where a rider attached to an accident policy under the head of war-
ranties provided that all statements made by insured in the schedule of
warranties should be deemed representations, and no representation un-
less material or fraudulent should invalidate any claim under the policy,
such provision abrogates the earlier clause, declaring, that any breach of
warranty in the schedule of warranties should invalidate all claims under
the policy and renders it incumbent on the insurer, if desirous of defeat-
ing the action on account of the falsity of any statement of warranty to
show its materiality.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 560.]

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE ☞288(1)—ACCIDENT POLICIES—REPRESENTATIONS.

Where it was not contended that accident policies were avoided by the carrying of other insurance, but only because the schedule of warranties did not show that such other insurance was carried, representations as to the carrying of other insurance are immaterial, and their falsity will not defeat an action on the policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 660–669.]

6. INSURANCE ☞90—ACCIDENT INSURANCE—CONSTRUCTION.

In the absence of statute, provisions in an insurance policy that the insurer shall not be bound by any action of its agents in issuing the same unless stipulations be indorsed and signed by other officers are valid.

7. INSURANCE ☞530—ACCIDENT INSURANCE—POLICIES—CONSTRUCTION.

An accident policy provided, in part 1, for payment of one-half of the principal sum for the irrevocable loss of the entire sight of one eye. Part 13, subsec. E, declared that, when liability was created under the provision of part 1, all insurance should thereupon immediately cease. Part 2 of the policy provided for weekly indemnities. Held that, in case of the total loss of an eye, all provisions as to payment of weekly indemnities were rendered inapplicable, and recovery for the amount specified for such injury could not be restricted to some pro rata share of the insured's actual weekly earnings proportionate to the weekly indemnity provided for in the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1309, 1316, 1317.]

At Law. Action by Dr. Wayne L. Stillman against the Ætna Life Insurance Company. Judgment for plaintiff.

The plaintiff, Dr. Wayne L. Stillman, a citizen of Iowa, sued the defendant Ætna Life Insurance Company, a Connecticut insurance corporation doing business in Iowa, in the district court for Woodbury county, that state, to recover damages for the loss of an eye against which he was insured by two accident policies of insurance issued by the defendant to him, in each the principal sum of $10,000. The policies differ only in their date. The petition is in two counts.

In count 1 a copy of the policy (No. B–250446) is attached as Exhibit A, which, so far as applicable to the question for determination, provides:

"Ætna Life Insurance Company.

"Accident and Liability Department.

| Accumulative Accident Policy | Principal Sum, Increasing to | First Year, | $10,000.00 15,000.00 |
|---|---|---|---|

"In consideration of the premium of sixty and no/100 dollars, and of the statements in the schedule of warranties indorsed hereon, and made a part hereof, which statements the insured makes by accepting this policy and warrants to be true, the Ætna Life Insurance Company, of Hartford, Conn., does hereby insure the person named and described in said schedule for the term of 12 months from the 4th day of March, 1913, * * * against loss, as herein defined, resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, suicide (sane or insane) not included.

"Single Indemnities.

"Part 1.

"If such injuries alone totally disable the insured, that is, immediately, continuously and wholly prevent him from prosecuting any and every kind of business pertaining to his occupation, and during the period of such continuous total disability and within two hundred weeks from the date of accident result in any one of the losses described below the company will pay the sum

specified opposite such loss, and in addition will pay weekly indemnity for the period of such disability to the date of death or other specified loss at the rate per week provided in part 11-A; or, if such injuries alone result within ninety days from the date of the accident in any of the losses described below without there being continuous total disability as above stated, the company will pay the sum specified opposite such loss.

"Loss of—

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"J. Entire sight of one eye, if irrevocably lost, one-half of principal sum.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"Part 2.

"A. If such injuries shall not result in any of the losses provided for in part 1, but shall alone totally disable the insured, that is, immediately, continuously and wholly prevent him from prosecuting any and every kind of business pertaining to his occupation, the company will pay indemnity at the rate of fifty & no/100 dollars per week, so long as he shall suffer such total disability.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"Accumulations.

"Part 6.

"If all premiums are paid annually, the original principal sum hereby insured will be increased ten per cent. in the second and each subsequent year for five consecutive years, until such increase amount to fifty per cent. of the original sum insured, and thereafter, so long as this policy is maintained in force by annual premium payments the amount insured will be the original principal plus the accumulations.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"Part 13.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"E. Any breach of warranty in the Schedule of Warranties indorsed hereon, or a failure to comply with any of the requirements, contained herein, shall invalidate all claims under this policy. When liability is created under the provisions of Part 1 hereof, all insurance hereunder shall thereupon immediately cease.

"F. An agent has no authority to change this policy or to waive any of its terms, nor shall notice to an agent or to any other person or knowledge of an agent or of any other person be held to effect a waiver or change in this policy or any part of it. No change whatever in this policy and no waiver of its conditions shall be valid unless an indorsement is added hereto signed by the president, a vice president, secretary or assistant secretary of the company expressing such change or waiver.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"A rider attached to and made part of the policy, contains the following:

"Warranties.

"All of the statements made by the insured in the schedule of warranties or copy of application indorsed on the policy shall be deemed representations, and no representation, unless material or fraudulent, shall invalidate any claim under this policy."

It is alleged in the petition that the principal sum insured was increased 20 per cent. by the payment of two annual premiums under the policy Exhibit A subsequent to its date, and therefore amounted to $12,000, at the time plaintiff was injured as hereinafter alleged. It is then alleged that on April 14, 1915, the plaintiff while said policy was in full force sustained an injury solely through external, violent, and accidental means, which totally destroyed the sight of his left eye and necessitated the removal thereof by a surgical operation; that due proof of such loss was given by plaintiff to the defendant as required in the policy; that it has neglected to pay such loss; and judgment is asked against the defendant for $6,000, upon said first count of the petition.

The policy set forth in count 2 of the petition is the same, except that it bears date and was issued February 24, 1914; and it is alleged in said count that the principal sum of the policy was increased to the extent of 10 per cent. or to $11,000, by the payment of one annual premium after its issuance. The same allegations are made in this count as to plaintiff's injury and the proof thereof that are made in the first, and judgment is asked against the defendant upon this count for $5,500; and upon both counts for $11,500, with interest thereon.

The case was in due time removed by the defendant to this court upon the ground of diverse citizenship of the parties, and a transcript of the record has been filed herein. The defendant has answered in this court each count of the petition substantially as follows:

That it admits the issuance of the policies of insurance to the plaintiff as alleged in each count of the petition, but says that each of said policies was issued to the plaintiff upon applications made by him to the defendant therefor which contain certain representations, which were warranted to be true, and upon the faith of which each policy was issued, some of which representations are alleged to be untrue and to avoid the policy.

Upon the back of the policy Exhibit A is what purports to be a "schedule of warranties" made by the plaintiff, containing what may be called questions numbered 1 to 20, inclusive. The earlier of the questions upon this policy call for the age, weight, height, and other matters of description of the plaintiff, the person answering, that need not be stated.

The answer to question No. 11 upon Exhibit A is: "I have no other life, accident or health insurance in this company, and no application for other accident or health insurance upon which I have not been notified of the action thereon, except as herein stated." Following is written in typewriting; "Have accident insurance in the F. & C. and I. S. B. Assn." Upon Exhibit B the answer to this question is: "Have accident insurance in this company, No. B–250446."

Upon Exhibit A the answer to the question No. 13 is: "I have never received indemnity for any injury or sickness, except as herein stated." Following this is written in typewriting: "Received benefits from auto accident about a year ago." Upon Exhibit B the answer to this question is: "Have received benefits from other accident companies."

Upon Exhibits A and B the answer to question No. 19 is: "I have not received medical attention within the past five years, except as herein stated." No other question is answered in the "schedule of warranties" upon either policy, and the answers to neither of the schedules purport to be signed by any one, nor is there anything to indicate by whom the purported answers were made.

The original of the application for the policy Exhibit A is in evidence, and it is not signed by the plaintiff, but bears an indorsement which reads as follows: "I recommend the risk. [Signed] J. W. Bell, Soliciting Agent."

A jury is waived in writing, and the cause is submitted to the court upon stipulations of the facts, supplemented by a deposition of defendant's assistant secretary, Edwin C. Bowen.

H. B. Walling, of Anthon, Iowa, and Griffin & Page, of Sioux City, Iowa, for plaintiff.

Sears, Snyder & Boughn, of Sioux City, Iowa, for defendant.

REED, District Judge (after stating the facts as above). The principal defense relied upon by the defendant is that the alleged failure of the plaintiff to answer the questions in the schedule of warranties Nos. 11, 13, and 19, indorsed upon the policies, except as indicated in such answers, invalidates all claims under each of the policies.

[1] There is no dispute that plaintiff on April 14, 1915, while both policies, if valid, were in force, suffered an injury, whereby through

240 F.—30

external, violent, and accidental means which alone totally destroyed the sight of his left eye, and unless he is barred by some provision of the policy he is entitled to recover from the defendant the sum speci-fied therefor in each of the policies with interest thereon.

Certain provisions of the Iowa statute have a material bearing upon this question. In 1880, the Legislature of Iowa passed what are now sections 1741 and 1750 of the Code of Iowa (1897), which read in this way:

"Sec. 1741. All insurance companies or associations shall, upon the issue or renewal of any policy, attach to such policy, or indorse thereon, a true copy of any application or representation of the assured which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or re-ferred to therein, or which may in any manner affect the validity of such policy. The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of this section it shall forever be precluded from pleading, alleging or proving any such application or representations, or any part thereof, or falsity thereof, or any parts thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option."

"Sec. 1750. The term 'agent' used in the foregoing sections of this chapter shall include any other person who shall in any manner directly or indirectly transact the insurance business for any insurance company complying with the laws of this state. Any officer, agent or representative of an insurance company doing business in this state who may solicit insurance, procure ap-plications, issue policies, adjust losses or transact the business generally of such companies, shall be held to be the agent of such insurance company with authority to transact all business within the scope of his employment, any-thing in the application, policy, contract, by-laws or articles of incorporation of such company to the contrary notwithstanding."

The stipulated facts show that J. W. Bell, a district agent of the defendant company at Council Bluffs, Iowa, solicited from the plain-tiff both of the policies in suit, received from him the first annual premiums thereon, which policies were renewed by the payment to Bell of a second and third year's premium upon Exhibit A, and a second year's premium upon Exhibit B, for which proper receipts of the com-pany were delivered by him to the plaintiff renewing said policies re-spectively for said years; but no copy of the applications was indorsed upon either of the policies for such renewals.

Under section 1741 of the Code above set out, unless the insurance company upon the issuance of these policies, or the renewals thereof, attached to said policies or renewals, or indorsed thereon, a true copy of the application or representations of the assured, the insurance com-pany is forever precluded from claiming or proving any such warran-ties or representations to be untrue or false in an action upon such policies. As before stated, what purports to be a copy of the "sched-ule of warranties" is indorsed upon each policy; but there is nothing to indicate that the application was ever signed by the plaintiff; nor is there anything to indicate by whom the alleged answers were made to such of the interrogatories as appear to be answered. Is this a compli-ance with section 1741 of the Code? In Seiler v. Life Ass'n, 105 Iowa, 87, 74 N. W. 941, 43 L. R. A. 537, which was a suit upon life policies of insurance issued in Iowa after the passage of the above stat-

ute, as here, what purported to be a copy of the application was set out or indorsed upon the policy, but the signature of the insured thereto was omitted from such copy, and the trial court refused to permit the introduction in evidence of the application when offered by the defendant because not a compliance with section 1741 of the Iowa Code. There was a recovery by the plaintiff of the full amount of the policy, and this ruling was made the basis of an appeal. The Supreme Court of Iowa said of section 1741 of the Code:

"This section has been often construed. For a quite recent exposition of its meaning we refer to Goodwin v. [Provident Sav. Life Assur. Ass'n], 97 Iowa, 226 [66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411]. It is urged on behalf of the appellant that all of the statements and\representations made by the assured were in the copy that was attached to the policy, and that he could not have been prejudiced by the omission of his signature, for he must have known that he signed the original. But it seems to us that the very purpose of the statute was to avoid, so far as possible, any dispute as to the assured's knowledge of the contract. The requirement is that a copy of the application shall be attached. We do not understand this to call for a fac simile, but it certainly demands at least a substantial reproduction of the instrument. The signature is an essential part of the application, and all that is essential in the original should appear in the copy. It will be noted that in the alleged copy it is not stated by whom the original is signed. * * * 'We are of the opinion that the copy of the application attached to the policy, not having the copy of the name of the applicant appended thereto, cannot be said to be a copy of such application, within the meaning of the statute. The signature is the thing which gives force to the application, and, when signed with knowledge of its contents, is conclusive on the insured. We think that the signature of the party to an instrument which receives its vitality solely from such signature is such a substantial part of it that a copy of it must contain such signature.' * * * The trial court was right in holding that the application in this case was no part of the contract, that the statements therein could not be given in evidence."

The court cites with approval Dunbar v. Insurance Co., 72 Wis. 492, 40 N. W. 386, which arose under a statute of Wisconsin, the counterpart of section 1741, and where the signature of the assured was omitted from the copy attached to the policy.

In Continental Ins. Co. v. Chamberlain, 132 U. S. 304, 309, 10 Sup. Ct. 87, 33 L. Ed. 341, this construction of section 1741 of the Code of Iowa was approved; and it was also held that under section 1750 of that Code the agent who procured the insurance must be held to be the agent of the company, and the company chargeable with knowledge of such facts pertaining to the insurance that came to the knowledge of the agent when soliciting the same: Cook v. Federal Life Ass'n, 74 Iowa, 746, 748, 35 N. W. 500; Goodwin v. Assurance Ass'n, 97 Iowa, 226, 235, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411, above; Liquid Acid Co. v. Phœnix Ins. Co., 126 Iowa, 225, 229, 230, 101 N. W. 749.

[2] Notwithstanding the Iowa statute and the decisions of its Supreme Court construing it, it is the contention of the defendant that it may still show a breach by the plaintiff of such conditions of the policy as are incorporated therein to defeat recovery thereon, though the application or "schedule of warranties" is not indorsed upon the policy or attached thereto. But the trouble with this contention (admitting without deciding that it correctly states the law) is that there

are no conditions of the policy, except "the statements in the schedule of warranties indorsed thereon, which statements the insured makes by accepting this policy and warrants to be true." Section 1741 of the Iowa statute was in force when these policies were written, and it is not within the rightful authority of the insurance company to evade the provisions of the statute by a statement in the policy, "which statements the insured makes by accepting this policy and warrants to be true." The statute imposes upon the insurance company the duty of attaching to such policy, or indorsing thereon, a true copy of any application or representations of the insured, which by the terms of the policy are made a part thereof and of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy; and the omission of the company to do so shall "forever preclude it from alleging or proving any such application or representation, or their falsity in any action upon such policy." No amount of discussion can make this provision of the statute plainer or obscure its meaning. The "schedule of warranties" indorsed upon the policy Exhibit A is not therefore admissible in evidence, nor is any evidence that they are untrue or false in any particular.

[3] The application for the policy Exhibit B was made by the plaintiff by letter dated February 14, 1914, to Agent Bell at Council Bluffs, which reads as follows:

"Anthon, Ia., Feb. 14, 1914.

"Mr. Bell—Dear Sir: Will you send me the terms upon an accident policy in the Ætna which costs say $10.00 a month. My policy expires the first few days in March and I am inclined to concentrate my various accident policies into a first-class company. Either let me hear from you in this matter as soon as convenient, or if you should be up in this part of the country come in and see me.

"Yours truly,                                    W. L. Stillman, Anthon, Iowa."

To this letter Agent Bell answered February 17, 1914, as follows:

"I am in receipt of your kind favor concerning the accident insurance proposition, and certainly thank you very much for thinking of me in this connection. I can assure you too, you would make no mistake in confining your insurance entirely to the Ætna, in fact there is no other company in the United States that treats professional and business men as well as the Ætna does. A man does not need to be so badly injured that he can't see, hear or talk to get total disability with us. Then too, as you know, our policy covers septic blood poisoning due to an accident, as well as contact with poisonous substances. You may have noticed that some of the physicians' societies have taken action against some of the companies for not covering blood poisoning due to contact with poisonous substances. They only cover septic blood poisoning due to an accident, that is, if you pricked yourself, or cut yourself, then they would cover you, but would not cover you if you happened to have a hangnail and become innoculated. You have a $60.00 policy with me now. You could double it for $120.00 which would be just $10.00 a month. That would cover you for $20,000 and $100 a week, if disabled. I would be very glad to fix you up a policy of this kind. I don't believe you would make any mistake in cutting out all your insurance and placing it that way in one company. You will have it with an agent who gives his personal attention and best judgment to handling claims of this kind, and our methods are prompt and up-to-date. If you wish to do this I will be glad to send you an additional policy, or put it all in one policy for you, which would probably be better, but in sending you a new policy for the total amount I would, of course, save the accumulations on your policy for this year. As you know, the

policy that you took last year will have 10 per cent. accumulations on it this year. I would add that, of course, to your new policy. If you paid $120 a year this would give you $20,000 and $100 a week for the ordinary accidents and would be just twice as large as the policy you have with me now. Then the policy would of course have the double-up feature and cover your wife, etc., the same as the policy you have. I am sure you will not make any mistake in doing this, doctor, and trust that you can see your way clear to do this. Trusting I may hear further from you concerning the matter and thanking you in advance with best wishes, I remain,

"Yours truly,                          J. W. Bell."

February 24, 1914, the plaintiff again wrote to Agent Bell as follows:

"Anthon, Iowa, Feb. 24, 1914.

"J. W. Bell, Council Bluffs, Iowa: Inclosed find check for $120. Be so kind as to renew policy B–250446 and issue another of like sort dated even date with this note.

"Yours truly,          W. L. Stillman, M. D., Anthon, Iowa."

On February 25th, Agent Bell replied to plaintiff's letter of the 24th as follows:

"Council Bluffs, Ia., Feb. 25, 1914.

"Dr. W. L. Stillman, Anthon, Iowa—Dear Doctor: I am in receipt of your favor inclosing check for the premium on your policy, also in payment of a like amount of additional insurance, and certainly thank you very much. I am taking it for granted you are lapsing your other insurance and putting it all in one good company, the Ætna. I am mailing the same to the home office for approval, and as soon as the policy is returned, I will mail it to you. I am dating this policy Feb. 24th, in compliance with your wishes as expressed in your letter. I certainly think too, you show your good judgment in increasing your insurance with us, as I am sure you will not make any mistake in doing this. Thanking you very much for the favor and any good you can do, with best wishes, I remain,

"Yours truly,                          J. W. Bell, Agt."

On February 25, 1914 (the same day), Agent Bell wrote a letter to J. M. Parker, Jr., secretary of the defendant company, which is as follows:

"Council Bluffs, Iowa, February 25, 1914.

"Mr. J. M. Parker, Jr., Secy., Hartford, Conn.—Dear Sir: Inclosed herewith I hand you policy B–261682, Dr. W. L. Stillman, together with application, for approval. The doctor is concentrating all his accident insurance in one company and is increasing it to the usual amount he carries, lapsing his other insurance in other companies. The policy he is taking now is to replace one on the F. & C. Company. If there are any amendments to make in the policy, kindly make the same and return immediately, together with return of the application, so I can have the application signed when the policy is delivered, and greatly oblige,

"Yours truly,                          J. W. Bell."

The application for the policy Exhibit B bears the following indorsement:

"Accident and Liability Department.

"Ætna Life Insurance Company of Hartford, Conn.

"Those portions of policies Nos. *B–250446 and B–261682*, issued to *Wayne L. Stillman*, limiting the total amount of insurance under Accident policies of this Company, are hereby modified to extend said limit to an amount not

exceeding *twenty thousand* dollars, with *one hundred* dollars per week for weekly indemnity, except as such sums ·shall be increased under the provisions of the double indemnity clause, the surgical operation clause, the accumulative ·clause, the hospital indemnity·clause and/or under the provisions of beneficiary supplements Nos. *98192 and 114130*.

"This extension of limit shall remain in force only so long as 'the insurance under each of said policies is continued in force. Dated at Hartford, Conn., this the *28th day of February, 1914.* Countersigned A. G. Powers, Policy Writer; J. M. Parker, Jr., Secretary."

The words of this indorsement italicized are typewritten, the rest are in print. This indorsement or slip appears to have been attached to the application at the home office of the company at Hartford, Conn., on receipt of the letter of Agent Bell addressed to the secretary of the company on February 25, 1914.

On February 5, 1915, the plaintiff again wrote to Agent Bell as follows:

"Anthon, Iowa, Feb. 5th, 1915.

"J. W. Bell, Council Bluffs: I find to-day upon my tickler a reminder that the Ætna policies are nearly due again. I have taken out in addition something like $25,000.00 in other companies. Mostly of cheaper grade, so want fact to appear in the new policies when you issue them. Send me the notice when due and I will forward check.

"Very truly yours, W. L. Stillman."

On February 8, 1915, Agent Bell replied to said letter of February 5th as follows:

"Dr. W. L. Stillman, Anthon, Iowa—Dear Doctor: I am in receipt of your favor advising me you had taken additional accident insurance, and in reply beg to advise this will make no difference to the Ætna, especially if you are not overinsured. Your premium is due the 24th of this month, could increase your insurance with this company if you wished to do so. We write up to $25,000 and of course if you wished me to do so, could raise your insurance accordingly. With best wishes I beg to remain,

"Yours truly, J. W. Bell."

From this correspondence and the additional stipulation of facts it appears that the second policy in suit, Exhibit B, was procured by defendant's agent Bell upon an application by letter from the plaintiff to him dated February 14, 1914, in response to which Agent Bell prepared an application for the policy which he (Bell) signed and forwarded to the company, and which the plaintiff never saw and never signed, though what purports to be a copy is indorsed upon the policy; and it was the duty of the defendant, under section 1741 of the Iowa statute, to attach to, the policy, or indorse thereon when it was issued, a true copy of such representations or warranties, and the omission to do so forever precludes the defendant from showing such statements or warranties, if any, to be untrue, to defeat an action upon the policy. Besides, under section 1750 of the Iowa Code, the agent ·Bell who prepared the application for this policy collected the premium thereon and procured the policy for the plaintiff and knew from the letter of plaintiff the insurance carried by him, and defendant is chargeable with such knowledge as the agent acquired in the transaction leading to the issuance of that policy, notwithstanding anything in the policy to the contrary, and is now estopped from denying the

knowledge so acquired by its agent Bell in the transaction leading to the issuance of the policy Exhibit B, its renewal, and the renewal of the policy Exhibit A in February and March, 1915. St. Paul Fire & Marine Ins. Co. v. Sharer, 76 Iowa, 282, 41 N. W. 19; Key v. Des Moines Ins. Co., 77 Iowa, 174–177, 41 N. W. 614; Liquid Acid Co. v. Phœnix Ins. Co., 126 Iowa, 225, 229, 230, 101 N. W. 749; Kirkpatrick v. London Guarantee Co., 139 Iowa, 370, 115 N. W. 1107, 19 L. R. A. (N. S.) 102; Wilson v. Insurance Co., 143 Iowa, 458, 462, 122 N. W. 157; Continental Ins. Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341.

In Continental Ins. Co. v. Chamberlain, 132 U. S. 304, 310, 10 Sup. Ct. 87, 89 (33 L. Ed. 341), above, a suit upon a life insurance policy issued in Iowa, the Supreme Court of the United States said of sections 1741 and 1750 of the Iowa statute:

"The object of this legislation is manifest. But if any doubt on the subject existed, it is removed by the case of St. Paul Fire & Marine Ins. Co. v. Sharer, 76 Iowa, 282, 286 [41 N. W. 19, 20], in which it was said: 'The purpose of the statute was to settle, as between the parties to the contract of insurance, the relation of the agents through whom the negotiations were conducted. Many insurance companies provided in their applications and policies that the agent by whom the application was procured should be regarded as the agent of the assured. Under that provision they were able to avail themselves, in many cases of loss, of defenses which would not have been available if the solicitor had been regarded as their agent, and many cases of apparent hardship and injustice arose under its enforcement, and that is the evil which was intended to be remedied by the statute, and it ought to be so interpreted as to accomplish that result.' This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case. It dispenses with any inquiry as to whether the application or the policy, either expressly or by necessary implication, made Boak the agent of the assured in taking such application. By force of the statute, he was the agent of the company in soliciting and procuring the application. He could not, by any act of his, shake off the character of agent for the company. Nor could the company by any provision in the application or policy convert him into an agent of the assured. If it could, then the object of the statute would be defeated. In his capacity as agent of the insurance company he filled up the application—something that he was not bound to do, but which service, if he chose to render it, was within the scope of his authority as agent. * * * His act in writing the answer, which is alleged to be untrue, was, under the circumstances, the act of the company.; * * * and, by force of the law of the state where such negotiations take place, is the agent of the company, and not, in any sense, an agent of the applicant."

This rule is followed in McMaster v. New York Life Ins. Co., 183 U. S. 25, 38, 22 Sup. Ct. 10, 46 L. Ed. 64, decided at the same term that Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, hereinafter referred to, was decided. There seems to be no doubt, therefore, that Bell was the agent of the defendant company in procuring the policy of February 24, 1914, Exhibit B, and that defendant is chargeable with all the knowledge acquired by him from the plaintiff in that transaction. In so holding there is nothing that violates the rule forbidding parol evidence to change the terms of a written contract—a question quite apart from any involved in this controversy.

[4] However, the rider attached to both policies under the head of "Warranties" provides:

"All of the statements made by the insured in the schedule of warranties or copy of application indorsed on the policy shall be deemed representations, and no representation, unless material or fraudulent, shall invalidate any claim under this policy."

This provision is later and inconsistent with the provisions of clause E of part 13 of the policy, which provides, "Any breach of warranty in the schedule of warranties indorsed hereon, or a failure to comply with any of the requirements, contained herein, shall invalidate all claim under this policy," and abrogates that clause, and the burden therefore is upon the defendant to prove the materiality of representations and their falsity, if material and false, of which there is no competent proof in this case; the "schedule of warranties" attached to the policy Exhibit B, not having been made or signed by the plaintiff, are not admissible in evidence, nor is any evidence or proof of their materiality or falsity admissible.

[5] The facts stipulated also show that at the time of the accident, April 14, 1915, the plaintiff was carrying other insurance than the two policies in the defendant company. But there is no issue that the policies were avoided by the carrying of other insurance, and only that they were avoided because the "schedule of warranties" did not show the other insurance carried. Nor does either policy by any of its provisions forbid the carrying of other insurance, and it is only alleged to be avoided by the failure to answer the questions in the "schedule of warranties," or a false statement therein. The stipulation as to the carrying of additional insurance by the plaintiff is therefore deemed quite immaterial.

[6] Counsel for the defendant cite numerous authorities which it claims support its contention that the knowledge by its agent Bell of the insurance carried by the plaintiff, and not shown in the "schedule of warranties," is not binding upon it under the terms of clause F of part 13 of the policy. Principal among these is the case of Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, above. That case, however, arose in Nebraska, and was not influenced by any statute such as that in Iowa above set out. It may be conceded that in the absence of a controlling statute it is competent for an insurance company to relieve itself from all obligations to pay its losses, by stipulations printed in its policies that it shall not be bound by any act of its agents in issuing the same unless such stipulations are indorsed thereon and signed by the president, secretary, or other chief officer of the company, and if such a case shall arise in this court it will be its duty to follow the decision of the Supreme Court in Northern Assurance Co. v. Grand View Building Ass'n, above. That case and the cases following it are therefore inapplicable to the questions involved in this case and need not be further noticed.

[7] The defendant further urges that the utmost the plaintiff is entitled to recover, if entitled to recover at all, would be some pro rata share of his actual weekly earnings proportionate to the weekly indemnity provided for in the policies. I am unable to perceive that the

weekly indemnity provision of the policy has anything to do with this case, for the total loss of the sight of an eye resulting solely from external, violent, and accidental means, as specified in each of the policies, is a fixed amount under each that the defendant shall pay for such injury, and the last clause of subsection E of part 13 of the policy, which reads, "When liability is created under the provisions of part 1 hereof, all insurance hereunder shall immediately cease," eliminates that question in all cases where a total loss arises under the policy.

A weekly indemnity is recoverable under the policies only when the insured is wholly or partly disabled because of the accident from pursuing his ordinary occupation, when the insured may recover the stipulated weekly indemnity for such disability. There is no claim for such disability to pursue an occupation in this case, but a single claim for the specified indemnity provided for the total loss of the sight of an eye in each policy. If defendant is not liable upon these policies, then seemingly the principal purpose of an insurance policy in Iowa is to enable the company to collect and retain the premiums it charges for insurance; but, in case a loss arises under the policy, to avoid the payment thereof if it shall deem it advisable to do so.

Under the issues, the terms of the policies, and the facts as stipulated, I can reach no other conclusion than that plaintiff is entitled to recover upon each of the policies in suit that part of the principal sum as increased by the accumulations specified in each for the loss of plaintiff's eye, the aggregate amount of which is $11,500, with interest at 6 per cent. from the date the amount was payable after the proofs were given to the defendant, and judgment is ordered therefor; to which judgment and order the defendant excepts, and is given 30 days from the filing of this opinion to settle and file a bill of exceptions.

It is ordered accordingly.