WROUGHT IRON RANGE COMPANY *v.* YOUNG.

Opinion delivered January 27, 1908.

PLEADING—AMENDMENT TO CONFORM TO PROOF.—Although plaintiff failed to plead an account stated, in suing upon an open account, yet, if evidence of such account stated was admitted without objection, it was not error for the court to treat the complaint as amended to conform to the proof and to submit to the jury the question whether or not there was an account stated.

Appeal from Ouachita Circuit Court; *Charles W. Smith,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellee, in his complaint, omitting formal parts, alleged that:

"In the years 1897, 1898 and 1899 he entered into written contracts with the Wrought Iron Range Company, a copy of which contracts is filed herewith marked 'Exhibit A,' and the same are made a part of this complaint; that he worked under these said contracts during the years 1897, 1898 and 1899, and performed his part of said contracts faithfully; that for his service under said contracts during the years 1897 and 1898, and due on the first day of January, 1899, the said defendant is indebted to the plaintiff in the sum of $774.57, which bears six per cent. interest from the first day of January, 1899, to this date. That for his commissions under said contracts for the year 1898, collected in 1899, and for his commissions for the year 1899, collected by defendant in 1899 and 1900, the said defendant is indebted to plaintiff in the sum of $600, which was due on January 1, 1901, and which bears six per cent. interest from the first day of January, 1901. That during the year 1898 plaintiff was employed by defendant, outside of said contract and without any reference to the same, to superintend collections for said defendant for six months, and that for said services there was no amount agreed upon, but that the said services are well worth $100 per month, making the amount due plaintiff by said defendant for superintending said collections the sum of $600."

Appellant answered, admitting the contracts of employment

but denying that appellee had discharged his duties under the contracts strictly and faithfully, and denying that anything was due under the contracts. The second paragraph of the answer denied that it employed plaintiff during the year 1898 to superintend its collections for the period of six months, or for any other period, and denied that plaintiff is entitled as compensation for his alleged services to the sum of $100 per month, or any other sum, and denied that plaintiff did superintend the collections, or perform any work for defendant not embraced in the contract aforesaid." The third paragraph was made a counterclaim against plaintiff, the appellant setting out the contracts referred to, and alleging that plaintiff under said contracts overdrew on his own account and was paid the sum of $549.65 in excess of the amount that was owing him, and permitted the men under his supervision, during the year 1897, 1898 and 1899, to draw in excess of the commissions due them $1,345.18, and prayed that it be given judgment against plaintiff for the total of these two amounts, towit: $1,894.83.

The contracts were in evidence, and showed that appellee was to receive as his compensation for superintending salesman engaged in selling Home Comfort Ranges for appellant "a commission as follows: For an average monthly sale of fifty ranges or less a commission of $2.00 each; for an average monthly sale of fifty-one to sixty ranges, inclusive, a commission of $2.50 each; for an average monthly sale of sixty-one or more a commission of $3.00 each; said average to be based upon cash sales and good notes. In no case, however, are commissions on such sales due or payable until notes taken for them are collected in full without legal process sixty days after their maturity. Said commissions shall not be payable until the first day of January following the date of this contract, nor until the books of the company can be closed for the year, which shall not be later than March 1st."

There are other provisions of the contract prescribing the duties of appellee, among which are the following: "To personally inspect all notes and sales made by men under his supervision and to ascertain if any promises or verbal agreements have been made by such men and left unfulfilled; to report each month to his general superintendent the work inspected

and its condition; to settle the books of all men under his supervision on or about the first of each calendar month, and transmit them immediately, together with his monthly report, and all cash on hand in excess of $500, to said company at Denver; any failure upon his part to discharge these duties shall be sufficient grounds for the termination of this contract."

There are certain other provisions as to overdrafts not necessary to set forth. And the further provisions as to deductions and settlements as follows:

"4. Ten per cent. of all losses upon notes received for sales made by men under his supervision during the term of this contract shall be deducted from amount due him; and any balance due on notes for ranges taken up and returned to the company shall be accepted as losses.

"6. Returns of collectors as to collections of notes or sales made by men under supervision of the party of the second part shall be accepted as conclusive in settlement between him and said company."

Other evidence was introduced, and the cause was submitted to the jury, who returned a verdict in favor of appellee for $985.20. Motion for new trial, reserving all exceptions saved, was overruled, judgment was entered for appellee, and this appeal was taken. Other facts stated in the opinion.

*Moore, Smith & Moore,* for appellant.

1. To enable one to recover upon an account stated, he must declare upon it as such. 108 Fed. 723; 1 Enc. Pl. & Pr. 88; 81 N. P. 268; 74 Ark. 472; 39 Minn. 467. The court should have excluded the evidence as to stated account because it was at variance with the allegations of the complaint, and it should have given the sixth instruction requested by appellant, because appellee had not sued on an account stated. It should also have refused instruction two given on behalf of appellee.

*Smead & Powell,* for appellee.

WOOD, J., (after stating the facts.)   1. There was testimony in the record, properly abstracted in brief of counsel for appellant, which it is unnecessary to set out here, that tended to prove that appellant furnished appellee a statement of ac-

count in the early part of 1898 (March), showing the result of the business for 1897 and the result of the debts and credits for that year. This statement was dated January 1, 1898, but it was furnished, as above stated, in March. The testimony was adduced without objection from appellant. It shows that appellant furnished the account to appellee, and that appellee received same without objection, and accepted the statement as correct. This statement of account for the year 1897, it appears, was in exact compliance with the terms of the contract, which, as to this, provides: "Said commissions shall not be payable until the first day of January following the date of this contract, nor until the books of the company can be closed for the year, which shall not be later than March 1st."

The testimony of appellee and an exhibit in the record of a statement of account, made up in accordance with the terms of the contract, tends strongly to prove that there was an account stated between appellant and appellee for the year 1897. This testimony went to the jury without objection at the time. True, after the evidence was all in, appellant asked the following: "6. Plaintiff having brought this suit upon the contracts entered into between him and the defendant for the years 1897, 1898 and 1899, and not upon the statement of accounts rendered him by defendant, he is bound by the terms of the contracts, and defendant is not estopped from showing that any of the items on the statement of accounts rendered were erroneously charged or credited, and may now show the true state of the account between the plaintiff and defendant as controlled by the contract." The court added the following: "Unless you find that for the year 1897 there was a settlement between the parties, and the account was stated between them. Then, as to the item of that year, if you so find, the defendant can not now make corrections;" and gave the instruction as modified, over appellant's objection. The court evidently treated the complaint, in the light of the above evidence, as amended so as to declare upon account stated, for the year 1897, and sent the question to the jury upon the above instruction as to whether or not there was an account stated. There was no error in this, and there is evidence to support the verdict that there was an account stated. The case of *Allen-West Com. Co.* v. *Hudgins,*

74 Ark. 472, is not in conflict with this. There was no evidence in that case of an account stated. The evidence in this case would uphold the verdict under the definition of an account stated, as announced in *Allen-West Com. Co.* v. *Hudgins*, 74 Ark. 472, *supra,* and bring the case well within the doctrine of *Patillo* v. *Allen-West Com. Co.,* 108 Fed. 723, where the complaint is considered amended to conform to the proof, as the court manifestly treated it.

The complaint, when critically examined, does not show that appellee was claiming anything for his work done in 1897. That year is treated as closed, and the settlement made for it. The amount he sues for in the complaint is $774.57, "due on the first day of January, 1899," evidently meaning thereby that appellant was due appellee for the commissions on stoves that had been sold in 1897, and that were collected in the year 1898, and had passed into the account for that year. The stoves under the contract that were sold in 1897, but payment for which was not due until 1898, and not collected till then, belonged to the business for the year 1898. The books showing the accounts for each current year, as the proof indicates and as the contract contemplated, were settled and closed the first of the year following. "The 1898 books," says the witness, "are settled" when that year comes to an end, and on the coming in of the succeeding year. The court did not err in giving instruction number two at the request of appellee*, nor in modifying and giving as modified, appellant's request for instruction numbered six *supra*.

2. The appellant contends that there was no evidence to support the verdict. The language of the verdict is as follows: "We, the jury, find for the plaintiff the sum of six hundred dollars ($600.00), with interest at the rate of six per cent. per an-

_____

* "2. The jury are instructed and if they find by a preponderance of the evidence in this case that, under the contract of 1897 between the plaintiff and the defendant, there were mutual dealings, and at the end of the year 1897 a statement was rendered the plaintiff by the defendant, purporting to set forth all the items of indebtedness on one side and the credits for the other for said year, and that said account was delivered to the plaintiff by the defendant and not objected to in a reasonable time by the plaintiff, then you are instructed that it becomes an account stated, and cannot afterwards be impeached or set aside by either party except for fraud or mistake."

num to the present, and also eighty-two and 35-100 dollars ($82.35) with the same rate of interest to the present, total $985.22," which the court, on motion of appellee, required the jury to modify by returning it *in solido* for $985.22. But the verdict shows that the jury had in view certain specific items. Appellant concedes that there is evidence to warrant the jury in finding for the six hundred dollar item, but contends that the jury arrived at the item of $82.35 by an erroneous process, not warranted by the evidence. There is nothing in the record to show the process by which the jury arrived at the item of $82.35. But appellant contends that the jury arrived at it by crediting appellee with commissions of $310 for the year 1897, and with commissions for the year 1898, to which appellee was not entitled. Appellant contends, in other words, that its counterclaim for $549.65 was absolutely correct as shown by the uncontradicted evidence. But the record shows that the account (Exhibit C to the evidence of appellant's witness by its auditor, who made it up) which constituted the basis of appellant's counterclaim was made up for the years 1897, 1898 and 1899, separating each of the three years. In other words, that this account, Exhibit C, was made up without reference to any account for the year 1897 that had been stated and settled, or treated as settled.

The jury, as we have shown, were warranted in finding, from the evidence and the instructions of the court, that there was an account stated for the year 1897, and they were therefore justified in concluding that appellant's counterclaim, as shown by Exhibit C, in the record, was itself erroneous. The accounts covered transactions for several years, and were more or less complicated. There was conflict in the evidence, and it was peculiarly within the province of the jury to determine the disputed questions of fact arising out of the accounts, which it has done under proper instructions. We can not say that the verdict was without evidence to sustain it, and the judgment is therefore affirmed.