JENKINS *v.* INTERNATIONAL LIFE INSURANCE COMPANY.

Opinion delivered June 20, 1921.

1. APPEAL AND ERROR—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF.—In an action on a written policy of life insurance, where testimony tending to prove an oral, instead of a written, contract of insurance was introduced without objection, the complaint will be treated as amended to declare on such oral contract.

2. INSURANCE—DELIVERY OF POLICY.—Since contracts of insurance may be made by parol, delivery of the policy is not essential to the completion of the contract.

3. INSURANCE—WHEN CONTRACT COMPLETE.—Where the minds of the insured and the insurer for a valuable consideration have met upon all the terms of the contract, it is complete and enforceable, even though it was intended by the parties to be evidenced by a policy which by some fortuity was not delivered before the death of the insured.

4. INSURANCE—DELIVERY OF POLICY DURING GOOD HEALTH.—The parties to a contract of life insurance may agree, as a condition precedent to a complete and enforceable contract of insurance, not only that there shall be a delivery of the policy, but also a delivery while the insured is in good health.

5. INSURANCE—APPROVAL OF APPLICATION BY MEDICAL DIRECTOR.—In view of the practice of life insurance companies not to issue policies except upon approval of the application therefor by a medical examiner or director, the issuance of a policy on the terms called for in the application and for the premium therein mentioned, and providing that it was to take effect as of the day previous, and the fact that the policy was registered and secured as required by the insurance department of another State, made a *prima facie* showing that the application had been approved by the medical director, and made a case for the jury on that issue.

6. INSURANCE—PREMIUM RECEIPT AS PART OF APPLICATION.—Where an application for life insurance provided that, if the premium be paid with the application, such payment is made subject to the conditions in the attached receipt, and the receipt provided that no conditions or agreements other than those printed therein and in the application should be binding, the receipt must be considered in connection with, and as a part of, the application.

7. INSURANCE—UNDELIVERED POLICY AS EVIDENCE.—A policy of insurance which has been issued and sent to the insurer's agent to be delivered on certain conditions, among which was that it should not take effect until the first premium was paid and the policy delivered to the insured while in good health, was competent evidence to be considered, in connection with the application and receipt, in determining when the insurance was to take effect.

8. INSURANCE—PAYMENT BY NOTE IN LIEU OF CASH.—Where an application for life insurance provided that the insurance should not take effect until the premiums had been paid in full in cash and the policy delivered to insured while in good health, and that if the premium was paid with the application the payment was to be subject to the conditions in an attached receipt, and the receipt provided that, if a full settlement has been made with the application, the insurance would be in force from the date of approval of the application by the medical director, payment partly by cash and partly by note was not such a full cash settlement as was required to make the insurance effective from the approval of the application.

9. INSURANCE—AUTHORITY OF AGENT IN ACCEPTING PAYMENT OF PRE-
MIUM.—Where an insurance agent has authority to solicit ap-
plications for insurance and to conduct the negotiations in clos-
ing up an insurance contract, he may accept notes or cash or
both, unless his authority is limited as to the time and mode of
payment of the premiums.

10. INSURANCE—WHEN CONTRACT COMPLETED.—Where an application
for life insurance provided that the insurance should not be in
effect until the premium had been paid in full in cash, and the
policy delivered to the insured during good health, and that such
payment was made subject to the conditions in an attached re-
ceipt, which provided for payment by cash or notes, and that, if
a full cash settlement had been made with the application, the
insurance should be in force from the date of approval of the
application by the medical director, the policy would become ef-
fective either (1) when the premium was paid in full in cash
with the application on the approval of the application by the
medical director, or (2) when payment of the premium was
partly or wholly by note on delivery of the policy while the
applicant was in good health.

Appeal from Clay Circuit Court, Eastern District;
R. H. Dudley, Judge; affirmed.

W. E. Spence and Oliver & Oliver, for appellant.

1. The contract of insurance, according to its ex-
press terms, was complete and in force from the date of
its approval by the company's medical director and bind-
ing, and the company was without power or right to
modify, change or attach further conditions to the con-
tract, or to the delive— of the policy. The contract was
consummated. 66 Ark. 612; 40 N. J. L. 103; 1 Bacon on
Ben. Soc., § 272, p. 538; Cooley's Briefs on Ins., p. 442
(a) and cases cited; Ib. 451 (f), 453 (g).

2. The issuance of a policy of insurance is accep-
tance and an approval of the application for insurance.
44 S. E. 28.

3. If policies of insurance contain inconsistent pro-
visions or are so framed as to be fairly open to construc-
tion, that view should be adopted, if possible, which
would sustain rather than forfeit the contract. 102 Ark.
1. It should be most strongly construed against the in-
surance company. 113 Ark. 174; 58 Id. 528. The ac-

ceptance by an insurer of the insured's note for the first premium binds the company. Cooley's Briefs on Ins., p. 586 (e); 94 Ark. 578.

A contract of insurance may be by parol. 25 Cyc. 716 A; Cooley's Briefs on Ins. 395 (d)-396-7; 124 Ark. 505; 49 U. S. App. 548; 23 C. C. A. 365; 83 Fed. 631. Signature is not always essential to bind an agreement. 13 C. J., § 128.

4. Where correct answers are given by an applicant for insurance and the agent, through fraud, mistake or negligence, writes them incorrectly, the company is estopped to take advantage of the wrongful act of its agent. Cooley's Briefs on Ins. 2555 *et seq.;* 81 Ark. 205. The authority of the agent to take and fill out applications for insurance requires him to do everything needed to perfect the policy. A practical construction given to the construction of a contract by an insurer in his dealings with the insured will be accepted by the courts. Cooley's Briefs on Ins. 643 (k); 109 Ark. 17-23.

The application, receipt and note for the first premium make a complete contract. Cooley's Briefs on Ins. 413 (c); 115 Fed. 81. See, also, 90 U. S. 85; 41 S. W. 319; 72 Am. Dec. 379; 94 N. W. 211; 99 *Id.* 130; 115 Pac. 779; Cooley's Briefs on Ins., p. 423 (i).

Here the terms of the proposition expressly provide that the insurance shall be in force from the date of the approval of the application. The judgment should be reversed, and, as the case is fully developed, judgment should be entered here for appellant. 116 Ark. 420.

*M. P. Huddleston* and *Chas. G. Revelle,* for appellee.

It is permissible and perfectly lawful for parties to agree to the payment of the first premium and delivery and acceptance of the policy conditions of the contract. Until this is done, there is no contract. 66 Ark. 612; Cooley's Briefs on Ins. 2555, 643 (k), 413 (c). Without assent or mutual meeting of minds, there can be no contract, 90 U. S. 85; 129 Ark. 137; 187 S. W. 265. A note

is not *cash,* and the first payment was not made. 46 C. C. A. 393; 92 U. S. 161; 104 *Id.* 18; 59 N. H. 298; 158 Mass. 132; 140 N. Y. 79; 67 N. W. 876; 48 Neb. 870; 8 N. J. L. (3 Halst.) 172; 30 Pac. 1064; 136 U. S. 257; 36 Pa. (12 Casey) 204. See, also, 8 Vt. 252. See, also, 46 C. C. A. 393; 103 Mass. 78; 30 Fed. 545; 28 *Id.* 705; 51 Iowa 679; 18 Minn. 448; 140 Mo. 599; 50 S. W. 519; 151 Mo. 620; 52 S. W. 356.

To be effective, an acceptance of an application for insurance must be in the very terms offered. 14 R. C. L., p. 71; 44 S. W. 28. Under the evidence there was no approved of the application, and the policy was not binding on appellee.

WOOD, J. This is an action brought by the appellant as administrator of the estate of M. E. Jenkins against the appellee on a contract of insurance on the life of M. E. Jenkins made payable to his estate. The appellant set up the policy and alleged that it insured the life of M. E. Jenkins for the sum of $3,000. He alleged the death of M. E. Jenkins, the compliance with the terms of the policy on his part, the refusal of the appellee to pay, and prayed judgment for the sum mentioned, and for penalty, attorneys' fees and costs.

The appellee answered, denying all the material allegations of the complaint. It tendered to appellant a note executed by M. E. Jenkins and the cash paid by him. The policy and application were introduced in evidence by the appellant. The application signed by appellant was dated February 21, 1920. It contained among others the following provisions: "(3) The insurance herein applied for shall not be in effect until the premium has been paid in full in cash and the policy delivered to me during my good health. (4) If the premium be paid with this application, such payment is made subject to the conditions in the receipt hereto attached." The receipt attached to the application is as follows:

"RECEIPT.

"This receipt not valid for more than first year's pre-

mium, nor in excess of a premium on $50,000 insurance.
......................................................................, 19............

"Received from ............................... an application for insurance on h........... life for $...................... on the ................... plan; also .................... dollars in cash, and note for $........................... due ............................. to be applied in payment of premium on said insurance, provided a policy of insurance upon such application is issued by the company. If full cash settlement required has been made with the application, the insurance will be in force from date of approval of the *completed* application by the company's medical director. If said application is not approved by the *company,* the settlement herein acknowledged will be returned by me forthwith, upon surrender of this receipt.

"No conditions or agreements other than those printed herein and in the application shall be binding. Conditions on back of this receipt a part thereof same as if printed herein.
"............................................................................... 51829.''

On the back of the receipt is the following: "The agent is not authorized to give this receipt to persons exceeding the limits of height and weight indicated in the table below, or to those who have been rejected by another company, or who are not in good health."

The application contained blanks to be filled out by the soliciting agent of the appellee, one of which required him to show how, if at all, the first premium had been settled. This was filled out, and showed that the premium had been settled by note. The application was approved by the appellee's medical director on March 4.

Among the provisions of the policy are the following: "After the delivery of this policy to the insured, it takes effect as of the 4th day of March, 1920. This contract of insurance shall not be deemed to have been made until the first premium is paid, and the policy delivered during the lifetime and good health of the insured."

E. R. Winton testified that he was the soliciting agent of the appellee, and took the application of M. E. Jenkins. When an applicant made settlement of the premium, wit-

ness signed the receipt and gave it to the applicant. In this case Jenkins made settlement by paying seventy-one cents in cash and executing his note payable to witness for the sum of $100. Witness accepted that in full settlement. Witness did not detach the receipt from the application and give it to Jenkins because they were in a hurry. The witness accepted the note unconditionally, just like he would have accepted the cash. After witness received the policy, he did not see Jenkins again before his death. When witness received the policy for delivery, it was accompained by a letter which instructed witness to deliver the policy only during the lifetime and continued good health of the applicant, and that the signature of the applicant must be obtained showing that he was in good health. Witness never delivered the policy nor collected the note. Witness offered to return the note and the seventy-one cents to the administrator, and he refused it. Witness returned the policy to the company on March 19. The policy sent witness for delivery was the kind of policy applied for by Jenkins.

On behalf of the appellee, Anthony Gazert testified that he was the manager of the policy department which has jurisdiction over applications and the writing of policies. Appellee had a form letter, "7-B," one of which was sent to appellee's agent, Winton, on or about the 6th of March, 1920, together with the policy on the life of Jenkins. The records would usually show if this letter had been returned. Witness had made a careful search for it and could not find it. Winton was recalled by the appellant, and stated in addition to his former testimony that form "B" referred to and which he received with the policy was a kind or receipt showing that the applicant for insurance had received the policy, and that he was in good health and had had no sickness since his examination. The applicant had to state in this form letter that neither he, nor any of his family, had had influenza since his examination. It instructed witness not to deliver the policy unless witness first obtained the signature of Jenkins to the receipt form 7-B.

At the conclusion of the testimony the court, at the request of the appellee, instructed a verdict in its favor. Judgment was rendered in favor of the appellee dismissing appellant's complaint, and for costs, and from that judgment is this appeal.

The appellant contends that the contract of insurance upon which he bases his action was consummated upon the approval of the application by the company's medical director and became a complete and binding contract without the issuance and delivery of the policy. As there was no objection on the part of the appellee to the testimony adduced by the appellant, we will treat the complaint as amended to declare upon an oral contract of insurance, such as appellant contends was evidenced by the documentary and oral testimony in the case. *Bank of Malvern* v. *Burton,* 67 Ark. 426; *Wrought Iron Range Co.* v. *Young,* 85 Ark. 217; *Griffin* v. *Anderson-Tulley Co.,* 91 Ark. 292; *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 567; *Oakleaf Mill Co.* v. *Cooper,* 103 Ark. 79; *Aetna Ins. Co.* v. *Short,* 124 Ark. 505.

There was no completed contract of insurance under those provisions of the application and the policy to the effect that the insurance shall not be in force until the payment of the premium and the delivery of the policy while the assured was in good health. The general doctrine is that contracts of insurance may be made by parol, and, such being the case, of course delivery of the policy is not essential to the completion of the contract of insurance; and where the minds of the insured and the insurer for a valuable consideration have met upon all the terms of the contract, the contract is complete and enforceable, even though it was intended by the parties to be evidenced by a policy, but which because of some fortuity was not delivered before the death of the insured. *Mutual Life Ins. Co.* v. *Parrish,* 66 Ark. 612; 1 Cooley's Briefs, 442 (a), 395 (d), 396, and cases cited in note: *Aetna Ins. Co.* v. *Short,* 124 Ark., *supra;* 25 Cyc. 716 (a). But of course the parties may agree, as a condition precedent to a complete and enforceable contract of

insurance, not only that there shall be a delivery of the policy, but also a delivery while the insured is in good health.   *McCully* v. *Phoenix Life Ins. Co.*, 18 W. Va. 782; *Kohen* v. *Mutual Reserve Fund Life Assn.*, 28 Fed. 705; 1 Cooley's Briefs, 444, 445, and other cases there cited. See *Nat. Life Ins. Co.* v. *Speer*, 111 Ark. 173.

The liability or nonliability of the appellee turns upon the meaning of the following clause in the receipt, towit:   "If full cash settlement required has been made with the application, the insurance will be in force from date of approval of the completed application by the company's medical director."   It is the usual, and so far as we know the universal, practice of life insurance companies not to issue policies of insurance except upon approval of the application therefor by a medical examiner or director as the case may be.   The issuance of the policy on the 5th of March upon precisely the terms called for in the application, and, as shown by the recitals in the policy, for the premium mentioned therein, and which policy was to take effect when delivered as of the 4th day of March, were facts tending to prove that the completed application was approved by the company's medical director.   The policy was registered and secured as required by the insurance department of Missouri.   It occurs to us that these facts raised a presumption, and were sufficient to constitute, at least, a *prima facie* showing, that the completed application had been approved by the company's medical director.   These facts made a case for the jury on that issue and shifted the burden to the appellee to show to the contrary.

In *O'Grier* v. *Mutual Life Ins. Co.*, 132 N. C. 542, 44 S. E. 28. it is held:   "The issuance of the policy is acceptance of the application and should be based upon the status at the time the application is made."

The undisputed testimony shows that the appellee's agent accepted a promissory note of $100.71 in cash in settlement of the first premium "just like he would have accepted the cash."

The only remaining inquiry, therefore, is, was appellee's agent authorized to accept part cash and a promissory note for the balance in full cash settlement of the premium as required by the above clause of the receipt? The application and the receipt each contain provisions which show that the receipt must be considered in connection with and as a part of the application. The application contained the following provision: "If the premium be paid with this application, such payment is made subject to the conditions in the receipt hereto attached." The receipt contained the following provision: "No conditions or agreements other than those printed herein and in the application shall be binding."

The policy, having been issued and sent to the appellee's agent to be delivered on certain conditions, was also competent evidence, and its provisions in regard to the payment of the first premium should also be considered in connection with the above provisions of the application and receipt to determine the meaning of the clause in the receipt quoted. After considering the various provisions of the application, the policy, the receipt and the oral testimony of the appellee's agent who conducted the negotiations for the appellee, we have reached the conclusion that the agent had no authority to accept a promissory note as "cash" in compliance with the "full cash settlement" required by the above clause to make a complete and binding oral contract of insurance.

"The fact that an agent has authority to collect premiums does not imply that he has authority to accept property or anything but cash in the payment of premiums." 2 Cooley's Briefs on the Law of Insurance, page 96, and cases cited. To so construe the words "full cash settlement" would obliterate all distinction between the word "cash" as it is defined by lexicographers and commonly understood, and the word "note," or any other property that the agent might see proper to accept as cash in settlement of the premium. Such interpretation would also destroy the difference in mean-

ing between the words "cash" and "note" appearing in the receipt. These words have an entirely different meaning and as used in the receipt were intended to perform an entirely different function. "Cash" is "current money in hand—money paid down." "Note" is "a written promise to pay money." Webster's New International and Funk & Wagnall's Dicts. If the words "cash" and "note" do not have a different signification as used in the receipt, then it was wholly unnecessary to use the word "cash" at all in the clause under review, because "full settlement" would have embraced either a "cash" settlement or a settlement by "note," or both. "A note is an agreement to pay money; it can not be treated as cash." *Pierce* v. *Bryant,* 5 Allen (Mass.), 91-93; *Cox* v. *State Bank of Trenton,* 8 N. J. Law, 172; *Dazet* v. *Laundry,* 30 Pa. 1064.

In insurance terminology, the words "cash" and "note" are not used synonymously, and where these words are used in insurance contracts or negotiations, they should be given effect according to their ordinary meaning. The authority of the agent in this case must be determined by the terms of the receipt, as he had no authority to bind the company to a contract of insurance contrary to the express terms of the receipt. Therefore, if the word "cash" in the clause under review means "cash" and not "note," the settlement of the premium in the manner disclosed by this record was *ultra vires.* *State* v. *Moore,* 167 N. W. 876; *Hoffman* v. *Hancock Mutual Life Ins. Co.,* 92 U. S. 161-164.

In *Dunham* v. *Morse,* 158 Mass. 132, A, in order to obtain insurance upon his life at once, instead of waiting for the action of the insurance company on his application, gave a promissory note for the amount of the premium payable to B, an agent of the company, who signed and delivered to A a contract purporting to give such insurance, which was expressed to be subject to certain conditions printed on the back, one of which was that the contract was not valid unless the premium was "actually paid in cash." B tendered the policy

to A, but the latter would not receive it and repudiated the contract. In an action by B against A upon the note, the court held that the note was without consideration. Among other things the court said: "If this premium was not paid in cash, the contract of insurance was not binding on the company. * * *" The insurance company had no knowledge that the defendant had not paid his premium in cash, and did not waive the condition printed on the back of the contract. They might be willing to allow their agent to bind them by a contract if he received the premium in cash, even though he was permitted to deposit it in his own bank account, when they would not be willing to be bound on his promise to pay them if he had no cash, but only a promissory note, as his reliance for the means of performing his promise."

In *Mutual Reserve Fund Life Assn.* v. *Simmons*, 107 Fed. 418-424, it is said: "Aside from any statutory regulations a life insurance company has a direct interest in maintaining the solvency of its agents, through whom large sums are often transmitted to or from it. It has therefore a direct interest in prohibiting them from involving themselves by incautious credits for amounts for which they, the agents, are holden responsible in cash and from loading themselves with unavailable assets with reference to any sum for which they must account."

Where an insurance agent has authority to solicit applications for insurance and to conduct the negotiations on the part of the company in closing up an insurance contract, unless such agent's authority is limited as to the time and mode of payment of premiums, he may accept notes or cash or both. "When no special mode of payment is stipulated for, any mode of payment which is accepted without objection on the part of the insurers or their agent will suffice." 2 May on Insurance, § 345; 1 Joyce on the Law of Insurance, § 80 (a), p. 293, and cases cited in notes. Now, when the provisions of the application, the policy, and the receipt in regard to the

payment of premiums are considered, it is clear that two modes were specified for the payment of premiums.   By the one method there is no completed contract of insurance until the premium is paid in cash in full, or by cash and note, and until the policy has been issued and delivered while the applicant is in good health.   By the other method, the one adopted by the agent and the applicant in this case, the insurance took effect immediately upon the approval of the completed application by the company's medical director, regardless of whether the policy had been issued and delivered or not.

By the one method which we will call the ''first,'' the premium must be paid ''in full in cash'' and the policy must be delivered while the applicant is in good health. But the first part of the receipt shows that the agent is authorized to waive the full payment in cash and to accept in payment of the premium part cash and a note for the residue.   Where the agent and the applicant adopt this, the first method, if the company issues the policy and same is delivered to the assured, it will be conclusively presumed, in the absence of fraud, that the requirement of full ''cash'' payment was waived, and that the policy was delivered during the good health of the applicant.   The insurance will then be in full force and effect from the date of the policy.   *O'Grier* v. *Mutual Life Ins. Co., supra.; Kendrick* v. *Ins. Co.,* 124 N. C. 315, 32 S. E. 728, 70 Am. St. Rep. 592.   See *Home Fire Ins. Co.* v. *Stancill,* 94 Ark. 578; *American Trust Co.* v. *Life Ins. Co.,* 92 S. E. (Va.) 706.

By the other, the ''second'', method, there must be a full ''cash'' settlement of the premium with the application.   If there is, and the company's medical director approves the completed application, then the insurance takes effect and becomes a completed contract as of the date of such approval.   It will be observed that the word ''cash'' has the same signification, whether the ''first'' or ''second'' method be adopted, and there is no conflict between the provisions of the application, the policy, and the receipt concerning the payment of the premium.

We are not confronted with any issue of waiver, or estoppel by course of conduct on the part of appellee, because there is no evidence upon which to predicate such issues. Under the first method above outlined, while the premium was paid, there was no delivery of the policy and hence no completed contract of insurance. Under the second method, while there was evidence tending to prove that the completed application was approved by the appellee's medical director, there was no "cash" payment of the premium, and hence no completed contract. Therefore, the appellee is not liable either under the allegations of the original complaint, or the complaint treated as amended to conform to the proof.

The judgment of the trial court so holding was correct, and it is affirmed.