INTER-SOUTHERN LIFE INSURANCE COMPANY v. RANSOM.

## Opinion delivered July 11, 1921.

1. TRIAL—EFFECT OF BOTH PARTIES REQUESTING PEREMPTORY INSTRUC-
TION.—Where both parties asked a peremptory instruction and did
not request other instructions, the only question for us to determine
is whether the evidence is legally sufficient to sustain the verdict di-
rected by the trial court.

2. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDING.—A
finding of the trial court based upon conflicting evidence is conclu-
sive on appeal, and the evidence must be given its strongest proba-
tive force in favor of the finding.

3. INSURANCE—MEETING OF MINDS.—Evidence *held* to sustain a find-
ing either that the policy issued and delivered to insured was the
kind of policy applied for or, if it was different, that it was accepted
by insured.

4. INSURANCE—STIPULATION AS TO DELIVERY TO INSURED WHILE IN
GOOD HEALTH—Where an application for life insurance provided that
"no contract of insurance shall be deemed made, and no liability
upon the part of the company shall arise, until a policy shall be
issued and be delivered and be personally and manually received
by me, and the first premium thereon actually paid, all during my
lifetime and while I am in good health," such provision did not con-
stitute a warranty, nor a condition precedent to a binding contract
of insurance.

5. INSURANCE—COMPLETION OF CONTRACT.—Where, by the provisions
of an insurance contract, certain conditions must exist and certain
things be done for the benefit of the insurer before the policy can be
delivered and the contract be consummated, the agent to whom is
committed the duty of delivering the policy and thus completing
the contract must see that the requirements of the policy in these
particulars are complied with before the policy is delivered, and
a delivery of the policy by such agent, in the absence of collusion with
the insured to defraud the company, and with knowledge of the
facts showing that the conditions did not exist, will constitute a
waiver of these conditions and requirements.

6. INSURANCE—DELIVERY OF POLICY.—In the absence of limitations
upon the authority of an agent whose duty it was to deliver a policy
of life insurance, the agent had the right to select the place of delivery
and the messenger to convey the policy to the insured.

Appeal from Johnson Circuit Court; *A. B. Priddy,*
Judge; affirmed.

*Hartsill Ragon,* for appellant.

The court erred in overruling plaintiff's motion to require the complaint to be made more definite in regard to delivery of the policy.    Under the pleadings the issue hinged upon a manual delivery of the policy to insured.    The evidence showed a delivery of the policy by a stranger to insured's wife.    This occasioned a surprise to appellant.    71 Ark. 197; 55 Ark. 567.

There was never a contract between the parties.    See 115 Fed. 81.    The insured never accepted the policy.    27 S. E. 38.    To be effective, an acceptance of an application must be in the very terms offered.    14 R. C. L. 895; 12 L. R. A. (N. S.) 421.    It is the duty of insured to examine his policy within a reasonable time. 81 Ark. 269; 86 Ark. 283.    There was no meeting of minds.    111 Ark. 342.

There was not such a waiver of its rights by the company as to bind it.    The application was a part of the policy.    The provision as to delivery and receipt of the policy while in good health was not a mere representation.    133 Ark. 348; 236 Ill. 444; 59 Ill. 123.    It constituted a warranty.    There was no waiver of such warranty.    3 Cooley, Brief on Laws of Ins., p. 2367.    Delivery to the wife did not constitute delivery to insured. 187 Pac. 405.    The agent was not authorized to waive a warranty as to delivery.

*Webb Covington,* for appellee.

There was a delivery and acceptance of the policy. The agent knew insured was sick when he delivered the policy.    This was a waiver of the provision as to delivery to insured while in good health.    217 N. Y. 336; 190 Ill. App. 604; 111 Ark. 442; 129 Ark. 240; 162 S. W. 10; 129 Ark. 450.    The agent of insurer had a right to select his own method of delivery.

Wood, J.    On the 13th day of July, 1920, Isaac H. Ransom made application to the appellant for a policy of life insurance in the sum of $1,000 in favor of his wife, the appellee.    The policy was issued on August 20, 1920,

and was sent to appellant's agent, H. D. Coffee, at Clarksville, Arkansas, some time prior to the 25th day of August, 1920. Coffee delivered the policy to one Earle Mardis, who was the manager of a coal mine at which Ransom worked, and Mardis delivered the policy to the appellee. Ransom became ill on the 5th of August, 1920, with typhoid fever, and died on September 16, 1920. This action was instituted by the appellee against the appellant on the policy. The appellant answered denying all material allegations of the complaint and set up in defense, among other things, the following provision of the application:

"*Second.* That no contract of insurance shall be deemed made, and no liability on the part of said company shall arise, until a policy shall be issued and be delivered, and be personally and manually received by me, and the first premium thereon actually paid, all during my lifetime and while I am in good health, and that for the first full annual premium paid thereon, the protection thereunder shall cease and end one year and one month (not less than thirty days) from the date of the policy issued hereunder, at 12 o'clock noon, standard time, reckoned at my domicile at this time, whether a full year shall have expired from the date such protection began thereunder or not."

The appellant alleged that the policy of insurance was not issued and delivered, and "personally and manually received" by Isaac H. Ransom and the first premium paid during his life and while he was in good health; that at the time of the issuance of the policy and at the time of its alleged delivery, Isaac H. Ransom was in a poor state of health, confined to his bed, suffering from a critical illness from which he grew progressively worse until his death.

The appellee testified that she was the wife of the insured. She identified the policy which is the foundation of the action and stated that same had been deliv-

ered to her on the 25th or 26th of August, 1920. It was delivered through Mr. Coffee and was brought to her home by Earle Mardis. Her husband was taken sick on the 5th of August. She was asked, "Did you read him the policy?" and answered, "Yes, sir; I don't know that I read it word for word, but I went over it with him. He knew that I had it." She was further asked: "Q. He was in a condition of health at that time that you couldn't worry him with a policy?" "A. I didn't deem it necessary, and I didn't do it. I didn't know it was necessary, while he could have understood it, but I didn't deem it necessary." She further testified in answer to questions that her husband understood that she had the policy; that he was not unconscious until about twelve hours before his death. He would have understood the policy if she had gone into details with him, which she didn't do because she didn't deem it necessary. She didn't sign any receipt for the policy.

The attending physician testified that Ransom was afflicted with, and died of, typhoid fever and its complications.

H. D. Coffee testified that he was the agent of the appellant at Clarksville, Arkansas, and received through the mail from the appellant the policy for delivery to the insured. He didn't deliver it personally to the insured, but gave it to Earle Mardis to deliver. He didn't know the exact condition of the health of the insured at the time—knew that he was sick—had been told that he was—had never seen him and didn't know how serious his illness was. Witness was asked whether he discussed with Mardis the condition of Ransom's health at the time, and answered that he couldn't tell about that. He was asked whether he and Mardis arranged to deliver the policy so that the witness would not know about the condition of Ransom's health and answered, "There was no arrangement made any more than I handed the policy to him and asked him if he would take it up there. He said he was going to

see how he was getting along.'' Witness did not present the insured or his wife with the receipt for the policy. Witness stated that he wouldn't ask the appellee to forge her husband's name on a post card receipt in which it stated that he was in good health. Witness further testified that the kind of insurance Ransom applied for was known as ''compound optional ordinary life with complete disability and double indemnity benefit.'' The premium for the policy he applied for was $34.45. He was asked if there was a little notice with the policy, and stated that he thought there was, and that he tore the same out because he didn't think it had any business in there.

The vice president of the appellant testified that the application was for the kind of policy as before stated; that the company was unable to deliver a policy of that kind for the reason that Ransom was a mine foreman. The appellant issued another policy, the kind it felt it could issue and deliver to one in that occupation. The premium on the policy applied for was $34.45 with an 80-cent war tax. The premium on the policy sent to Ransom was $32.22 per thousand with an 80-cent war tax. There was a difference in the two kinds of policies, consisting of the complete disability and double indemnity features, which the witness explained. The witness stated that the appellant always sent notices on all policies showing that its agents were required to receive the personal signature of the insured and return the same to the company; that the appellant did not receive the card from Ransom countersigned.

Another witness testified that he, in company with Coffee, solicited the application of Ransom for insurance at the latter's home on the 13th day of July, 1920; that Ransom said that he would not take the ''compound optional ordinary life'' policy. Witness explained to him and he finally applied for the policy with double indemnity and complete disability features, another policy from

that which was issued; that was the only one he would accept. The witness further stated that he delivered several policies in Clarksville with the green sheet on it. That receipt was to show that the insured received it during the time of his good health and that it was the same policy he had applied for. The instructions to the agent were to have the insured sign this receipt personally and mail it to the home office.

At the conclusion of the testimony the appellee asked the court to instruct a verdict in her favor, and the appellant likewise asked the court to instruct a verdict in its favor. The court directed the jury to return a verdict in favor of the appellee for the full sum as shown by the fact of the policy, and from a judgment in favor of the appellee for that sum is this appeal.

1. It is a close question of fact in this case to determine whether the minds of the parties met upon the contract of insurance as evidenced by the policy which is the basis of this action. As both parties asked a peremptory instruction in their favor and did not request other instructions, the only question for us to determine is whether the evidence is legally sufficient to sustain the verdict directed by the trial court. *St. L. S. W. Ry. Co.* v. *Mulkey*, 100 Ark. 71; *St. L., I. M. & Sou. Ry. Co.* v. *Ingram*, 118 Ark. 377; *Hall* v. *Harrell*, 136 Ark. 329; *Gibson* v. *Allen-West Commission Co.*, 138 Ark. 172; *Oil Trough Gin Co.* v. *Hines*, 141 Ark. 135.

Even if the finding of the court in directing the verdict on the facts be against the decided preponderance of the evidence, it is not our province on appeal to determine where the preponderance lies. The finding of the trial court based upon conflicting evidence is conclusive on appeal; and the evidence must be given its strongest probative force *in favor of* the finding. *International Harvester Co.* v. *Layton*, 148 Ark. 156; *Gossett* v. *Gossett*, 112 Ark. 47, and cases there cited.

Now, applying the above rules to the facts under review, we are convinced that there is substantial testimony

—legally sufficient evidence—to sustain the directed verdict. While both the agents who solicited the application of Ransom for insurance testified that he applied for a policy known as the "compound optional ordinary life" with "complete disability and double indemnity benefits," yet the application itself shows that the kind of policy applied for was C. O. O. L. A copy of the application was attached to the policy which bears the signatures of Coffee and Kavanaugh as witnesses. It was made an exhibit to the complaint, was identified by the appellee and introduced in evidence. The letters, C. O. O. L., as explained, were intended to denote that the kind of insurance to be issued to Ransom was the "compound optional ordinary life," and that was the kind of policy, as is shown by the policy itself, and the testimony of witnesses, that was issued and sent to the agent for delivery to Ransom. In the application attached to the policy that was delivered to Mrs. Ransom the letters C. D. and D. I., which were intended to denote "complete disability and double indemnity," were canceled or erased by the stroke of a pen. There is no explanation in the record as to when or why this was done. The witnesses who witnessed the application do not explain it, and the voice of the insured is hushed by death. In the absence of any explanation in the record as to why these letters were canceled, the presumption must be indulged that they were stricken from the application before it was signed by the applicant and presented to the company. It was admitted by counsel for appellant that the application attached to the policy was a photographic copy of the application made by Ransom to the appellant.

The issuance of the kind of policy called for by this application with the complete disability and double indemnity benefits omitted therefrom also tends to prove that the application was made for the kind of policy that was issued. See *Jenkins* v. *International Life Ins. Co.*, 149 Ark. 257. True, the vice president of the company also

testified that the complete disability double indemnity policy was applied for, and that the company did not issue this, but did issue the policy in suit instead, which was sent to be delivered to the applicant; that this was a proposal for that kind of insurance, instead of the kind applied for. But, as before stated, the application itself and the issuance of the policy were facts tending to prove that the applicant applied for the kind of policy that was issued and sent to their agent for delivery. If we are mistaken in this, even if the policy issued and sent to the agent for delivery to Ransom was not the policy applied for by him, and if this policy can be considered as but a proposal for a different kind of insurance than that applied for, still there was some substantial testimony tending to prove that, as such proposal, it was accepted by Ransom. He had applied for insurance and had paid a sufficient sum of money to cover the premium for the policy that was issued, as well as the other kind. The difference between the two according to the testimony had been fully explained to him before his illness.

Mrs. Ransom testified that the day or the day after the policy was received she went over it with her husband. She didn't read every word of it, but he knew that she had it. He was taken sick on the 5th of August, 1920, and was not unconscious until about twelve hours before his death, and during the fourth week of his illness, which would be about the time the policy was delivered to her, they thought he was going to recover. He could have understood the contents of the policy. While he could have understood it, she didn't think it necessary to read it word for word to him. He retained the policy and didn't ask that the check or money given in payment of the premium be returned to him. He lived for twenty-one days.

Now, if Ransom were alive and seeking to cancel this policy on the ground that same had not been accepted by him, would not the above testimony be some substantial evidence on such an issue to prove that he had ac-

cepted the policy? It occurs to us that, if such were the issue, the above testimony would be sufficient to at least sustain a finding by the trial court that Ransom had accepted the policy. If so, it is also sufficient to sustain the finding by the trial court on the issue here presented as to whether or not the policy had been accepted by Ransom. We conclude therefore that there was testimony tending to prove that the policy sued on was accepted by the insured and that the minds of the insured and the insurer for a valuable consideration had met upon all the terms of the contract evidenced by the policy.

2. There are provisions in the policy making the application a part of the policy, and declaring that the policy and application constitute a contract between the parties. The application contained the following provision: "No contract of insurance shall be deemed made and no liability upon the part of the company shall arise, until a policy shall be issued and be delivered, and be personally and manually received by me, and the first premium thereon actually paid, all during my lifetime and while I am in good health."

The appellant contends that the above provision, because of its peculiar language, constitutes a warranty and is in the nature of a condition precedent to any effective contract of insurance. We believe that such a construction is contrary to our own cases and the law generally upon the subject. To be sure, the application is signed by the applicant for insurance, and, in that sense, he adopts its contents or provisions as his own; but in reality the form of the application is prepared by the insurance company and its language, except the blanks to be filled out in response to questions, is the language of the company. Similar provisions are usually found in all standard applications for policies of insurance and are inserted for the benefit of the insurer. The provision above quoted was wholly for the benefit of the appellant. There is nothing in the language used to constitute a warranty on the part of the assured, or

a condition precedent to a binding contract of insurance.

In *American Life & Accident Association* v. *Walton*, 133 Ark. 348, we stated the law upon this subject as follows: "The doctrine of warranty in the law of insurance is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction."

We find nothing in the special language of the provision under review which should constrain us to hold that the requirements set forth could not be waived by appellant, nor do we find anything in the peculiar language of this provision that can distinguish this case in principle from former decisions of this court, some of them quite recent. The doctrine of our cases is that where, by the provision of an insurance contract, certain conditions must exist, and certain things be done for the benefit of the insurer before the policy can be delivered and the insurance contract thus consummated, the agent to whom is committed the duty of delivering the policy and thus completing the contract must see that the requirements of the policy in these particulars are complied with before the policy is delivered; that a delivery of the policy by such an agent in the absence of collusion with the insured to defraud the company, and with knowledge of the facts showing that the conditions did not exist and the things had not been done incident to delivery, as required by the policy, will constitute a waiver of those conditions and requirements. *Kansas City Life Ins. Co.* v. *Ridout*, 147 Ark. 563, and other cases there cited. See, also, *Jenkins* v. *Ins. Co.*, 149 Ark. 257.

In the case of *Illinois Bankers Life Assn.* v. *Rhodes*, 147 Ark., 191, the policy was sent to the agent of the company "with authority to make delivery," and we said: "This clothed him with all things necessary in connection with the delivery of the policy."

In the case at bar no collusion of the agent with the insured is alleged or shown. There is testimony tending to prove that the agent whose duty it was to deliver the policy had knowledge of the fact that the insured was ill at the time the policy was delivered to Mrs. Ransom. It was also proved that he failed to comply with the provision of the application requiring that the policy be "personally and manually received by the applicant" and disobeyed his instructions in having the policy delivered without having a receipt therefor signed by the insured. But this failure on the part of the agent to discharge his duty to the company did not avoid the policy, and, after its delivery, it will be conclusively presumed that such requirements were waived by the appellant. See *Jenkins* v. *Ins. Co., supra.*

3. There was no error in the ruling of the court in refusing to require the appellee to make her pleadings more definite and certain by stating the manner of the delivery of the policy, giving the name of the place where, and the person to whom the delivery was made. In the absence of limitations upon the agent's authority whose duty it was to deliver the policy, he had the right to select the place of delivery and his own messenger to convey the policy to the insured. See *Illinois Bankers Life Assn.* v. *Rhodes, supra; Jenkins* v. *Ins. Co., supra.*

The record presents no error in the rulings of the circuit court, and its judgment is therefore affirmed.