## NEWSOM v. NEW YORK LIFE INS. CO.
### No. 5982.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

D. H. Wasserman, of Cleveland, Ohio (Griswold, Green, Palmer & Hadden and Wasserman & Ascherman, all of Cleveland, Ohio, on the brief), for appellant.

J. H. Schultz, of Cleveland, Ohio (Garfield, Cross, MacGregor, Daoust & Baldwin, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

On September 7, 1922, Day M. Newsom made written application to the appellee insurance company, in the state of Iowa, for two policies of insurance, each in the sum of $5,000. On the same day he was examined by a medical examiner for the insurance company and executed a note in the amount of the first premium, payable to the order of the local agent "twenty days after date, September 7, 1922, upon the tender to me of the policy of insurance on my life for $10,-000." He died September 13, 1922. In the meantime the application had been sent to the home office, where it was received and approved September 14. The following day the policies were written up and executed by the insurance company and forwarded to its branch office at Omaha. On September 18 the home office learned of Newsom's death and telegraphed its Omaha office recalling the policies, which had not been delivered. Thereafter the note was returned to Newsom's mother, the beneficiary under the policies, who seven and a half years later, January 13, 1930, brought this suit in the state court to recover the insurance. The cause was duly removed to the District Court, and, upon conclusion of the plaintiff's evidence on the trial, the court directed a verdict for the insurance company. The plaintiff appeals from the judgment rendered thereon.

The only questions presented in argument here relate to the interpretation and effect to be given the provision of the application set forth in the margin.[1] The appellant makes no claim under the first part of this provision, stipulating that the insurance shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full, but relies entirely upon that part under which the insurance could be made effective as of the date of the application upon (1) the payment "in cash" of the full amount of the first premium, (2) a declaration in the application of such payment, and (3) the acceptance by the applicant from the agent of a receipt therefor on the form attached to the application. The contention is that the execution of the note by the insured and the acceptance of it by the agent was the equivalent to payment of the first premium in cash, that the required receipt was given to and accepted by the applicant, and, further, that, even if the premium was not paid in cash or the receipt therefor accepted, the agent waived these conditions, as well as the declaration of payment in cash, which he was authorized to do under the laws of Iowa where the application was made and the policies, if the insured had lived, would have been delivered.

In our view the execution and acceptance of the note did not constitute payment in cash. The provision in question seems to have been carefully phrased. The first part of it states that the insurance shall not take effect even upon the delivery of the policy unless and until the first premium is "paid in full." The second part, that upon which the appellant relies, provides, among other things, that, in order to put the insurance

---

[1] "1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination, and the contract shall thereupon, unless provided for otherwise above, relate back to and take effect as of the date of this application; provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium for the insurance applied for in questions 2 and 3 and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount applied for in Questions 2 and 3, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not."

into effect, the applicant must pay the full amount of the first premium "in cash." The adding of the words "in cash" to this clause indicates an intent to require the payment to be made within the restrictions that are ordinarily imported by that term. Compare Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416. A note is an agreement to pay; it is not cash. Pierce v. Bryant, 5 Allen - (Mass.) 91, 93; State v. Moore, 48 Neb. 870, 878, 67 N. W. 876; Dunham v. Morse, 158 Mass. 132, 134, 32 N. E. 1116, 35 Am. St. Rep. 473; Jenkins v. International Life Ins. Co., 149 Ark. 257, 232 S. W. 3; In re Palliser, 136 U. S. 257, 263, 10 S. Ct. 1034, 34 L. Ed. 514. Furthermore, the note here in question was not even a demand note, but was a promise to pay twenty days after date upon the tender of the policies. The appellee was not bound to make a tender until after medical examination and investigation, and then only if it should be satisfied that the applicant was entitled to the insurance under its rules and standards of insurance. None of the cases cited by appellant holds that such a note is cash as that term is ordinarily used. In Kilborn v. Prudential Ins. Co., 99 Minn. 176, 108 N. W. 861, the policy contained no provision that the first premium should be paid in cash; and in New York Life Co. v. Pike, 51 Colo. 238, 117 P. 899, the application did not provide that the premium must actually be paid before the policy was in effect. In McConnell v. Southern States Life Ins. Co. (C. C. A.) 31 F.(2d) 715, the insured executed a note which was discounted at a bank by the agent and the cash proceeds thereof turned into and retained by the company. We do not refer to all the authorities cited by appellant on this point, but an examination of them discloses that none of them is applicable to the state of facts presented in the present case.

Mrs. Newsom testified that at the time the application was made she heard a conversation between her son and the agent in which her son offered to pay the first premium in cash, but the agent advised him that the note was the same as cash, and that it would not be necessary for him to sign the form declaring that payment had thus been made. She also testified that a receipt was delivered to her son and that she returned it to the agent upon the return to her of the note. Her testimony, however, as to whether the receipt was in the prescribed form is indefinite; and, besides, in her reply to the amended answer, she alleged that, at the time the policies were mailed from the appellee's home office, the appellee knew "that the receipt, form of which was attached to said application, had not been delivered to Day M. Newsom, if in fact said receipt was not delivered." The agent, who was an uncle of Newsom, testified that the receipt was not detached from the application, that he did not tell Newsom that the execution and delivery of the note was equivalent to paying in cash, and that nothing was said about the insurance being in force from the date of the application. His testimony as to the nondelivery of the receipt is corroborated by other testimony that is quite convincing. It further appears from the agent's testimony, and there is nothing in the record to contradict it, that, at the time the application was taken, Newsom had no funds, and the agent loaned him $50 for his personal use.

Assuming full authority in the agent, it may well be a question of doubt as to whether the testimony of Mrs. Newsom, giving to it its broadest implications, touches upon all the essentials of a valid waiver [see Reynolds v. Detroit Fidelity & Surety Co., 19 F. (2d) 110 (6 C. C. A.), and National City Bank v. National Surety Co., 58 F.(2d) 7 (6 C. C. A.)], or whether, even though bearing upon such essentials, in view of other admitted facts and circumstances it was of such substantial character as to require the submission of that issue to the jury. Cf. Strider v. Pennsylvania R. R. Co., 60 F.(2d) 237 (6 C. C. A.), decided June 27, 1932. We pass both questions, however, and consider whether the agent had the authority necessary to effect a waiver.

It is not claimed that the agent's authority was other than that of a local agent. The application provided that only the president, a vice president, a second vice president, a secretary, or the treasurer of the company could waive any of the company's rights or the requirements in the application. This provision was notice to the applicant that the agent had no authority to waive any of the terms or conditions upon which the insurance might be made effective. Such provisions are generally held to be binding. Hartford Fire Ins. Co. v. Nance, 12 F.(2d) 575 (6 C. C. A.); Hartford Fire Ins. Co. v. Jones, 15 F.(2d) 1 (6 C. C. A.). And they cannot be waived on behalf of the company except by one of its officers thus designated or by an agent acting with express authority. In New York Life Ins. Co. v. Ollich, 42 F.(2d) 399 (6 C. C. A.), it was the practice of the company to permit its agent to make the insurance effective "upon delivery" of the policy. Cf. Dodd v. Aetna Life Ins.

Co., 35 F.(2d) 673, 674 (6 C. C. A.). Here the appellant must rely for waiver, not upon a delivery of the policies or an authorized practice, but upon the spoken word of the agent alone. In Northern Assurance Co. v. Building Association, 183 U. S. 308, 361, 22 S. Ct. 133, 153, 46 L. Ed. 213, it was said: "Where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent." It was not shown in the case at bar that the local agent had authority to waive the provisions of the application, or, if he attempted to do so, that the company, through its authorized officials, did anything that could be construed as a ratification of his acts.

■ The application was signed in Iowa, and the policies, had they been delivered, would have been delivered in that state. A statute of that state, section 9004, Iowa Code, provides that the agent of an insurance company shall be held to have "authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws, or articles of incorporation of such company to the contrary notwithstanding." Appellant contends that this statute gave to the local agent the power and authority to waive the written conditions of the application. Reliance is placed on Liquid Carbonic Acid Manufacturing Co. v. Insurance Co., 126 Iowa, 225, 101 N. W. 749, where suit was brought on a fire insurance policy providing in terms that no agent could waive any of its provisions, one of which was that it should be "absolutely void" if the property should become incumbered. The court held that the consent of the agent of the company to the placing of a mortgage on the property in violation of this provision was a waiver of the provision. In Continental Ins. Co. v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341, also relied on, a district agent in Iowa, having written authority "to prosecute the business of soliciting and procuring applications for life insurance" throughout the state, advised an applicant for insurance that certain questions in the application did not relate to the character of insurance that he then had. The applicant, acting upon the agent's advice, permitted the application to be filled out accordingly. The policy was issued, and in a suit thereon the court held that the insurance company was estopped from asserting that the representations made by the insured upon the advice of the agent were false. In both of these cases the premium was paid and the policy delivered. Here there is no such situation. The policies were not delivered and the insurance could not attach as of the date of application except upon payment of the premium in cash, a declaration in the application that such payment had been made, and the acceptance of a designated receipt. The appellant is not therefore in a position to contend, as were the policyholders in the two cases referred to, that a policy of insurance which had been taken out and paid for was effective, notwithstanding a provision of the policy which declared that it should become void under certain conditions, but does and must contend that the insurance was put into effect under the provisions of an application which cannot be relied upon to show the contrary. He thus contends that the terms of the application on which his action is based, and without which there could have been no insurance, are conclusive as to existence of the insurance but are not to be considered as determinative of the means by which it could be created. We think the contention is unsound. Cf. Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Subar v. New York Life Ins. Co., 60 F.(2d) 239 (6 C. C. A.). Nor in our view is it justified by the Acid Case or any of the other cases dealing with the Iowa statute. As to such other authorities see: Arispe Mercantile Co. v. Insurance Co., 141 Iowa, 607, 120 N. W. 122, 133 Am. St. Rep. 180; Black v. Insurance Ass'n, 171 Iowa, 309, 152 N. W. 7; De Bolt v. German American Ins. Co., 181 Iowa, 671, 165 N. W. 55; Nertney v. National Fire Ins. Co., 199 Iowa, 1358, 203 N. W. 826; Neiman v. City of New York Ins. Co., 202 Iowa, 1172, 211 N. W. 710; Connecticut Fire Ins. Co. v. Buchanan (C. C. A.) 141 F. 877, 883, 4 L. R. A. (N. S.) 758; Mulrooney v. Royal Ins. Co. (C. C.) 157 F. 598, 607; Stillman v. Aetna Life Ins. Co. (D. C.) 240 F. 462, 467.

While the Iowa statute gives to the local agent of an insurance company "authority to transact all business within the scope of his employment," it nowhere says, even if it were permissible, what the scope of such employment shall be. This statute of Iowa is no more definite as to the agent's authority than the Florida statute considered in Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202. That statute made any person soliciting insurance for an insurance company the agent or representative of the company for all "intents and purposes," but it was held that as the statute

did not "fix the scope" of the agent's authority, it had no effect upon the true relationship of the parties. In Ohio there is a statute which makes a person who solicits or takes an application for insurance the agent of the insurance company, "anything in the application or the policy to the contrary notwithstanding." This statute was construed in Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 73, 76 L. Ed. 72, where it was claimed that the local agent waived a provision of the policy stating that the policy should be void if the property "be or become incumbered by a chattel mortgage." The court held that the statute did not define the scope of the agency and could not be given the effect of extending the agent's authority to "matters of contract with respect to the policy, including consent to the alteration of its terms," and further, that as the Ohio authorities did not give it such effect, the written contract, the policy provision, was controlling. We are impelled to a like view of the Iowa statute and decisions.

The judgment is affirmed.