INTER-SOUTHERN LIFE INSURANCE COMPANY *v.* COFFEE.

Opinion delivered April 30, 1923.

1.  INSURANCE—QUESTIONS FOR JURY.—Evidence *held* to justify submission to the jury of the issue whether the delivery of a policy of insurance by an agent was through a mistake or inadvertence on the agent's part, and, if a mistake, whether or not it was caused by following the instructions of those who had authority to direct him in the premises.

2.  INSURANCE—LIABILITY OF AGENT.—An agent of an insurance company is liable to the company if he or a messenger selected by him delivers a policy in violation of his contract of agency.

3.  INSURANCE—LIABILITY OF AGENT.—An insurance agent would not be liable to the insurance company for a breach of the contract

of agency in delivering a policy to insured while not in good health, if such delivery was made under instructions of agents of the company authorized to direct him in regard thereto.

Appeal from Johnson Circuit Court; *A. B. Priddy,* Judge; affirmed.

*Patterson & Ragon* and *Hays, Ward & Hays,* for appellant.

The court erred in giving instruction numbered 4, telling the jury that the policy was delivered, instead of leaving the question for the jury to pass on. On the testimony, a verdict for appellant should have been directed. The beneficiary in the policy that was wrongfully delivered had collected the insurance. 149 Ark. 517. No evidence upon which to base instruction No. 5. Appellee disregarded his instructions as agent, and is liable to his principal for loss or damage resulting therefrom. 2 C. J. 715; 104 Mass. 152, 6 Am. Ry. 207; 114 Ark. 18; 90 Ark. 301. The judgment should be reversed, and judgment entered here for appellant.

*Paul McKennon,* for appellee.

The instruction to the agent were ambiguous and capable of different constructions, and if the agent made an honest mistake in trying to carry them out he is not liable. 31 Cyc. 1454, 1455-1460. No error in instructions to the jury, and its verdict should not be disturbed.

*Patterson & Ragon,* and *Hays, Ward & Hays,* in reply.

The agent disregarded clear and written instructions susceptible of but one construction, and the damage resulted and he is liable therefor. 120 N. W. (N. Dak.) 545, 22 L. R. (N. S.) 509; 100 N. W. 524.

WOOD, J. This action was instituted by the appellant against the appellee to recover the sum of $1,000, the amount of the policy of insurance which appellant alleged it had been compelled to pay to Mrs. Ransom. The appellant alleged it issued its policy and mailed the same from its home office at Louisville, Kentucky, to its agent,

Coffee, at Clarksville; that with the policy was inclosed a receipt which reads as follows: "Policy No. 87363 for Isaac H. Ransom has been received by me while in sound health, is as represented, and is satisfactory.

"Insured................................................................

1920

................................................................

"Date policy delivered.................................."

"Also inclosed with the policy was the following direction to the agents: 'Agents must have this receipt dated and signed by policy owner and mailed immediately to home office'."

Pasted to the policy was a green slip which provided: "This policy shall not take effect until it shall be personally received by the applicant and satisfactory settlement of the first premium has actually been made, all within the lifetime and during good health of the applicant. If the applicant is not in good health at the time the policy is received, it should be held subject to the company's order, and notice to that effect immediately sent to the company at its home office in Louisville, Ky."

The appellant alleged that Coffee, in violation of his contract as agent and contrary to instructions as above set forth, tore from the policy the notice as above set forth, and failed and refused to present the receipt as set out above; that the agent knowingly and fraudulently failed to present the receipt to Ransom, because such agent knew at the time that Ransom was suffering from a fatal sickness; that by such negligence and fraudulent conduct on the part of Coffee he permitted a valid contract of insurance to be consummated under which the appellant was compelled to pay the sum above mentioned. for which it asked judgment.

The appellee, in his answer, admitted that he was appellant's agent under a contract which became effective on the 13th day of August, 1920, which contract was signed by the appellee and Fred W. Bailey, State

agent of the appellant for Arkansas. He admitted that. on the 13th day of July, 1920, Isaac H. Ransom made application to the appellant for a policy of insurance upon his life, and denied the other material allegations of the complaint.

The testimony for the appellant tended to prove that the manager of its Southwestern Department, which embraced in its territory the States of Arkansas and Oklahoma and seventeen counties in Tennessee, was Fred W. Bailey, with office at Memphis, Tennessee. He testified that he was general manager of all local agents in Arkansas, so far as producing business is concerned. He gets all the local agents and manages them. He made the contract with appellant, subject to the approval of his company, which contract the company approved. This contract, among other things, provided: "The agent agrees that he will not deliver a policy of insurance where he has reason to believe that a change has occurred in the applicant's health or other conditions have arisen that would affect the desirability of the risk, but that he will return the policy to the home office and await instructions." The appellant also had a contract with agents in the Arkansas territory, Baker and Kavanaugh, which contract was a duplicate of that of the appellee. Each of these agents was furnished a rate book which contained, among others, the following instruction: "A. If any unfavorable change has taken place in applicant's health, occupation, surroundings or family history since he was examined, the agent must not accept premium and deliver policy, but must promptly return policy to home office," etc.

The appellant issued two postcard receipts with each policy, one of which was to be returned to the State agent at Memphis, and the other to the home office at Louisville. The form of the receipt is as above set forth. It was the duty of the local agent to have the receipt dated and signed by the policy owner and to mail the same to the home office. The appellant issued a policy

upon an application of Ransom, which was taken by its agents, Coffee and Kavanaugh. Kavanaugh was directed by the manager at Memphis to go to Clarksville and assist Coffee in securing applications. Witness was asked why Kavanaugh would be working with some new man and in what particular he gave the new man instructions, and answered, "Nothing other than he familiarized himself with our various policy forms and how the rates were figured and the settlements made—how we filled out applications and what disposition was made of them when they were filled out, and what disposition was made of the policy, and the way it was delivered when the policy was issued." He was asked the following question: "Did Mr. Kavanaugh have any authority to direct Mr. Coffee in regard to what his contract of agency was or meant?" and answered, "No, he didn't have any authority. He just showed him the way that we done it—the way we handled business." The only object of Kavanaugh's work with Coffee was to assist Coffee in producing business.

The policy insuring the life of Ransom for $1,000, his wife being the beneficiary, was mailed from the office at Memphis. The application was secured on the 13th day of July, 1920. At that time Ransom was engaged in the coal mining business, a hazardous occupation, and on that account the appellant did not issue the particular kind of policy called for in his application, but instead mailed to its agent, Coffee, a different kind of policy from that applied for, with directions to deliver the same to Ransom. Pasted in the policy when it was mailed out was the notice set out above. The appellant never received the postcard receipt above mentioned which was to be signed by the insured and sent to its manager. At the time the application was procured Ransom was in good health, but before the policy was received by the appellee for delivery Ransom was stricken with typhoid fever. Coffee did not deliver the policy in person to Ransom and take a receipt therefor,

but instead gave the policy to one Mardis, an employee of Ransom, and directed him to deliver the policy to Mrs. Ransom. Coffee knew at the time that Ransom was sick.

It was shown on behalf of the appellant that Coffee said he tore off the green slip pasted to the policy and had not had the receipt card signed, giving as his reason that he was not going to permit Mrs. Ransom to forge Ransom's name on the card when Ransom was sick. It was also proved that at the end of a lawsuit the appellant had to pay Mrs. Ransom the amount of the policy, which the appellant here seeks to collect from the appellee.

Kavanaugh testified on behalf of the appellant that he lived in Memphis; that he had the same contract with the appellant that Coffee had. He worked with Coffee in Johnson County to produce business for both of them. He was not giving Coffee any instructions. Sometimes he was sent out of the Memphis office, and other times went of his own accord. Bailey, the manager, suggested that witness go over to Johnson County—that he could get business over there. Witness' and Coffee's names were signed to the application.

The appellee testified that he had a conversation with Bailey about the agency. He supposed Bailey approached him because of his connection with the Bank of Clarksville. He had verbal agreement with Bailey that he was to take the agency of the appellant in Johnson County with men whom Bailey would send. Those men were usually termed "high power" or "high pressure" men whose business it would be to solicit and sell insurance to people to whom witness would introduce them. Appellee was to introduce them to at least ten men per day and was to share in the profits of the business they wrote. Kavanaugh came and spent about three weeks with the appellee. Baker came into the county and was working with another agent at Cabin Creek. Appellee introduced Kavanaugh to Ransom, and Kavanaugh signed appellee's name to the application. Appellee received the policy on the 25th of August, 1920.

Mardis, who was in the employ of Ransom, told appellee that he thought Ransom was sick, and that he was going by to see him. Appellee hardly knew what to do about it, since Mardis said that Ransom was sick. After consulting with Baker, he asked Mardis if he would take the policy with him and turn it over to Mrs. Ransom. The policy received was not the kind that Ransom had applied for, and the appellant had written Kavanaugh with reference to it, and Kavanaugh inclosed that letter to appellee with the following note. "Mr. Coffee: I would show this letter to Mr. Ransom, and if he does not accept this contract he is certainly foolish, for it is the very best any good company will do for him. With personal regards to yourself and Mrs. Coffee, I remain, O. C. K." Also in the letter was the following: "I trust that you will make this clear to Mr. Ransom, and that you will be successful in delivering same, or, as per our talk, you might get Mrs. Ransom to carry same herself for the boy in case he will not carry it." That letter had been received by the appellee before he gave the policy to Mardis to give to Mrs. Ransom. Appellee requested Mardis to hand the policy to Mr. or Mrs. Ransom, but to tell them not to sign this receipt for it, because appellee didn't consider it as a delivery, and the receipt was worded in such a way that they would have had to sign a falsehood, should they sign it, and appellee didn't want that to happen. The agents had a period of sixty days in which to make delivery of policies, and at the end of that time had to make delivery or settlement and return the policies to the company. Appellee further testified that he didn't recall that he had told any one that he had torn the green slip out of the policy. He didn't remember whether the green slip was in there or not when he gave the policy to Mardis. He turned the policy over to Mardis, not to be delivered to the Ransoms, but merely to submit to them for approval or rejection, because it was a different policy than he had applied for, and Ransom had a right

to exercise his judgment as to whether he would take a different policy from that applied for. Appellee didn't make any further inquiries to find out the condition of Ransom, nor did he say anything to Mardis about getting the policy back.

On cross-examination appellee further stated that he testified in the litigation between Mrs. Ransom and the appellant, and that, if he testified in that case that he tore the notice out, it was correct; that the notice was not a part of the policy at all. It was only a notice to the agent, and witness thought it would not affect the policy if it was torn out. It was only a notice to the appellee as to the disposition to be made of it. If witness removed it, he had a right to do so, and put it in his pocket or on his file. Further along in his testimony witness stated that the agents had a right to leave the policy with the applicant for insurance sixty days for approval or rejection; that it always had been appellee's custom.

The appellant in a number of instances sent a different policy than was applied for, and the policies were submitted to the applicants for their approval or rejection. The testimony of Mardis, Mrs. Ransom and witness Cobb, who were present when Mardis gave the policy to Mrs. Ransom, was to the effect that Mardis turned the policy over to Mrs. Ransom and told her that Coffee had sent it to her to look over; that it was sent for their approval or disapproval, and that the receipt was not to be signed because Ransom was sick.

At the conclusion of the testimony the appellant asked the court to direct the jury to return a verdict in its favor, which prayer for instruction the court refused, and to which ruling the appellant excepted.

Among other instructions, the court on its own motion gave the following:

"4. The court instructs you, gentlemen of the jury, that, under the terms of the contract here and under the

evidence, Mr. Coffee was the agent of the Inter-Southern Life Insurance Company to deliver this policy. The court instructs you that this policy was delivered under the law.''

And also instruction No. 5, which, in effect, told the jury that the only question for them to consider was whether or not the policy was delivered intentionally or by mistake or inadvertence, and, if delivered by mistake or inadvertence, whether such mistake or inadvertence was caused by Coffee undertaking to carry out instructions delivered to him by any person who had any authority to direct him in the premises. In this instruction the court told the jury that if Coffee delivered the policy by mistake, that is, if he didn't intend to deliver it while the man was sick, he would be responsible to the company for such mistake or inadvertence, unless, in making such mistake, he was carrying out instructions of some agent of the company who had authority to direct his actions.

Among other prayers for instructions, the appellee asked the following: ''If you find from the evidence that the defendant did not deliver the insurance policy to the deceased, Isaac Ransom, but sent it to Mrs. Ransom to be examined and approved by her before accepting it, then you are instructed that the plaintiff can not recover, and your verdict should be for the defendant.'' The court refused this prayer.

The jury returned a verdict in favor of the appellee against the appellant. Judgment was rendered in his favor, from which is this appeal.

The court erred in giving instruction No. 4 on its own motion, because, under the evidence, it was an issue for the jury to determine whether or not the policy was delivered to Ransom, and the court should not have declared that, under the law, the policy was delivered, and should have given the prayer of appellee above mentioned. However, instruction No. 4 was in favor of the appellant, and it could not, and does not, complain because

the court gave it. But appellant contends that, after the court gave this instruction, it should have further declared as a matter of law that, under the terms of the contract of agency, which were written and unambiguous, there could be no recovery in favor of the appellee against the appellant for the reason that the contract of agency forbade the appellee from delivering the policy when he knew that the insured was not in good health at the time the policy was delivered. This contention of the appellant cannot be sustained. While the contract of agency, and the receipt to be signed by the insured when the policy was delivered, and what is called the green slip attached to the policy, all provided, in effect, that there was not to be delivery of the policy while the insured was in bad health, nevertheless, there was testimony in this record which warranted a finding that the policy was delivered by the appellee to Mrs. Ransom, not for the purpose of consummating a contract of insurance between appellant and Ransom, but only for the purpose of permitting Ransom to look over the policy to see whether same would be accepted by him. There was testimony on behalf of the appellee tending to prove that, before he sent the policy to Mrs. Ransom, he received the letter from the Memphis office inclosing the policy; that this policy was not the same as the one applied for by Ransom; that the letter contained directions to show the letter to Ransom, stating that if he didn't accept the contract inclosed he was certainly foolish, for it was the very best any company would do for him. The letter contained the statement: "I trust you will make this clear to Mr. Ransom, and that you will be successful in delivering same, or, as per our talk, you might get Mrs. Ransom to carry same herself for the boy in case he will not carry it." When this letter came, the appellee states that he did not know what to do about it, but, after talking with another agent, he concluded to send it to Mrs. Ransom for her approval or rejection. Appellee testified that he instructed his messenger to

hand the policy to Mr. or Mrs. Ransom, but to tell them not to sign the receipt because the appellee didn't consider the same a delivery, and he didn't want them to sign the receipt, because if they did they would be telling a falsehood, which he didn't want to happen. He testified that Ransom had said distinctly that he wouldn't accept that kind of a policy, and that his purpose in sending the same to them was, not as a delivery, but merely to submit to them for approval or rejection, because it was a different policy than that Ransom applied for. He further stated that Ransom had a right to keep the policy sixty days to see whether he wanted it or not; that the agent had that right; that it had always been appellee's custom. He further testified that the appellant in a number of instances had submitted policies to applicants in this way for their approval or rejection.

The above testimony of the appellee, which was not disputed, and other testimony set forth above which it is unnecessary to further reiterate, justified the court in submitting the issue to the jury, as to whether or not the delivery of the policy by the appellee was through a mistake or inadvertence on the part of appellee, and, if a mistake, whether or not it was caused by undertaking to carry out the instructions of those who had authority to direct him in the premises. Under the contract of agency between the appellant and the appellee the appellee was intrusted with the duty of delivering policies, and, if he made a mistake, intentional or unintentional, in delivering the policy to Ransom, contrary to the contract of agency, resulting in damage to the appellant, he would be liable for such damage. Since Mardis was the messenger selected by the appellee, any mistake that Mardis may have made in delivering the policy in violation of the contract of agency, appellee would be responsible for. *Inter-Southern Life Ins. Co.* v. *Ransom,* 149 Ark. 517-527. But the undisputed testimony shows that Mardis carried out strictly the directions of the appellee. He delivered the policy to

Mrs. Ransom with instructions that he did so for the purpose of enabling them to look it over to see whether or not they would approve it. As we have already stated, under the evidence in this record the court erred in declaring as a matter of law that there had been a delivery of the policy. But, conceding that there was a delivery, such delivery would not make the appellee liable to appellant for a breach of the contract of agency where the appellee delivered the policy under instructions of agents of the appellant who had authority to direct him in the premises. If the appellee delivered the policy under such circumstances, he was not liable to the appellant for so doing. Under the testimony this was an issue of fact for the jury.

The instructions of the court are not happily drawn, but it cannot be said that they are prejudicial to appellant. We are convinced that the court did not err under the evidence in refusing appellant's prayer for a peremptory instruction. The appellant did not ask any other prayers for instructions. The court did not err in submitting to the jury the issue as to whether or not the appellee, under the testimony, was liable to the appellant, and it occurs to us that the charge of the court, considered as a whole, fairly submitted this issue to the jury. The judgment is therefore correct, and it is affirmed.

McCULLOCH, C. J., (dissenting.) According to the undisputed evidence, liability was imposed on appellant by the wrongful act of its agent, Coffee, in delivering the Ransom policy contrary to instructions. It is undisputed that appellant sent the policy to Coffee with instructions not to deliver it unless Ransom was in good health; that Ransom was desperately ill with typhoid fever when Coffee received the policy, of which the latter was aware, and that, notwithstanding this knowledge; he turned the policy over to Mardis, who was Ransom's employer, and that Mardis left it with Ransom's wife, where it remained until Ransom's death.

Coffee's agency required of him the exercise of sound judgment and discretion, and he had no right to delegate that authority to Mardis, especially since the latter was Ransom's employer and was interested in Ransom's welfare. By turning the policy over to Mardis and delegating to him authority to leave it with the Ransoms, he not only made it possible for liability to be wrongfully imposed on appellant, but he was also guilty of misconduct in leaving the policy in the hands of Ransom's wife, the beneficiary thereunder, until death occurred and liability of appellant matured—a period of several weeks.

Appellee undertakes to justify his conduct by saying that the company had in other instances left policies with the assured merely for inspection. This is no justification, for appellee's instructions were in writing, and were very plain, to the effect that the policy should not be delivered unless the assured be in sound health. Even if appellant saw fit, in other instances, to deliver policies merely for inspection while the insured was in good health, it certainly gave appellee no implied authority to deliver a policy for inspection to the wife of an assured who was ill with such a dangerous disease as typhoid fever.

On the face of these facts, appellee was guilty of negligence which made him responsible to his principal for the loss that was sustained.

The case presents a clear instance where the appellant has been whipsawed. In the trial of the former action of the beneficiary, Mrs. Ransom, against appellant, it was proved that the policy was delivered, and now appellee attempts to prove that he did not intend to deliver the policy so as to put it in force, but merely left it with Mrs. Ransom for her to determine whether or not she would accept it, and left it there until after her husband died.

I think that, according to the undisputed testimony, appellee should bear the loss, for the reason that it was caused by his own misconduct.

SMITH, J., concurs in the views here expressed.